## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

Pfizer Inc.
235 East 42nd Street
New York, NY  10017

and Pfizer Products Inc.
Eastern Point Road
Groton, CT  06340

        Plaintiffs,

   v.

HON. DAVID KAPPOS
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

Office of General Counsel, United States
Patent and Trademark Office, P.O. Box
15667, Arlington, VA 22215
Madison Building East, Rm. 10B20, 600
Dulany Street, Alexandria, VA 22314

        Defendant.

Civil Action No.:_____

## COMPLAINT

    Plaintiffs Pfizer Inc. and Pfizer Products Inc. (collectively "Pfizer"), for their complaint

against the Honorable David Kappos, states as follows:

## NATURE OF THE ACTION

    1.    This is an action by the assignee of United States Patent No. 7,544,362 ("the '362

patent") seeking judgment, pursuant to 35 U.S.C. § 154(b)(4)(A), that the patent term adjustment

for the '362 patent be changed from 100 days to 207 days.

2.     This action arises under 35 U.S.C. § 154 and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

## THE PARTIES

3.     Plaintiff Pfizer Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 235 East 42nd Street, New York, NY 10017.

4.     Plaintiff Pfizer Products Inc. is a corporation organized under the laws of the State of Connecticut, having a principal place of business at Eastern Point Road, Groton, CT 06340.

5.     Defendant David Kappos is the Under Secretary of Commerce for Intellectual Property and Director of the U.S. Patent and Trademark Office ("PTO"), acting in his official capacity.  The Director is the head of the PTO, charged by statute with providing management supervision for the PTO and for the issuance of patents.  The Director is the official responsible for determining the period of patent term adjustment under 35 U.S.C. § 154.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction to hear this action and is authorized to issue the relief sought pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1361, 35 U.S.C. § 154(b)(4)(A) and 5 U.S.C. §§ 701-706.

7.     Venue is proper in this district by virtue of 35 U.S.C. § 154(b)(4)(A).

8.     This Complaint is timely filed in accordance with 35 U.S.C. § 154(b)(4)(A) and Fed. R. Civ. P. 6(a)(3).  This Complaint is filed within 180 days of the Director's grant of the patent at issue and is within such period when the time period provided by § 154(b)(4)(A) is equitably tolled.

9.      This Complaint is also timely filed pursuant to 5 U.S.C. § 701-706.  The final

agency action by the PTO with regard to Plaintiffs' request for patent term adjustment was taken

on September 15, 2009, when the PTO denied Plaintiffs' request for reconsideration of the

Director's initial determination of the patent term adjustment period.

## BACKGROUND

10.      Dongwan Yoo, Changhee Lee, Jay Gregory Calvert, and Siao-Kun Welch are the

inventors of U.S. patent application number 11/359,334 (the '334 application), entitled "N

Protein Mutants of Porcine Reproductive and Respiratory Syndrome Virus," which was issued as

the '362 patent on June 9, 2009.  The '362 patent concerns a genetically modified porcine

reproductive and respiratory syndrome virus and methods of making and using it.  The '362

patent is attached as Exhibit A.

11.      Plaintiffs Pfizer Inc. and Pfizer Products Inc. are the joint and equal owners of the

'362 patent, as evidenced by assignment documents recorded in the PTO at Reel 016852/ Frame

0788 against U.S. Provisional Application No. 60/730,663, the priority application of the '362

patent.  Pursuant to the PTO's policy as stated at M.P.E.P. § 306.01, such assignment has effect

as to the '362 patent.  Plaintiffs Pfizer Inc. and Pfizer Products Inc. are the real parties in interest

in this case.

12.      Section 154 of title 35, U.S.C., requires that the Director of the PTO grant a patent

term adjustment in accordance with the provisions of section 154(b), which sets forth a

"Guarantee of prompt Patent and Trademark Office responses" and a "Guarantee of no more than

3-year application pendency."  Moreover, 35 U.S.C. § 154(b)(3)(D) states that "[t]he Director

shall proceed to grant the patent after completion of the Director's determination of a patent term

adjustment under the procedures established under this subsection, notwithstanding any appeal taken by the applicant of such determination."

13.     In determining the patent term adjustment, the Director is required to extend the term of a patent for a period equal to the total number of days attributable to delay by the PTO under 35 U.S.C. § 154(b)(1), as limited by any overlapping periods of delay by the PTO as specified under 35 U.S.C. § 154(b)(2)(A), any disclaimer of patent term by the applicant under § 154(b)(2)(B), and any delay attributable to the applicant under 35 U.S.C. § 154(b)(2)(C).

14.     The Director made a determination of patent term adjustment for the '334 application pursuant to 35 U.S.C. § 154(b)(3) and notified Pfizer on May 20, 2009 of that determination and its intent to issue the '362 patent on June 9, 2009 reflecting its patent term adjustment determination.

15.     PTO regulation 37 C.F.R. 1.705(d) provides in part that "…If the patent indicates or should have indicated a revised patent term adjustment, any request for reconsideration of the patent term adjustment indicated in the patent must be filed within two months of the date the patent issued and must comply with the requirements of paragraphs (b)(1) and (b)(2) of this section."

16.     Pfizer petitioned the PTO to reconsider the Director's patent term adjustment period for the '362 patent on July 20, 2009, and complied with the applicable regulatory requirements.  The petition is attached as Exhibit B.

17.     On September 20, 2008, this Court issued its opinion in *Wyeth v. Dudas*, 580 F. Supp. 2d 138 (D.D.C. 2008), in which, on a substantially similar fact pattern, the Court validated substantially the same patent term adjustment calculations as advanced by Petitioner Pfizer in its

petition for reconsideration, and specifically rejected the approach for calculating the period of adjustment used by the Director to determine Petitioner Pfizer's patent term adjustment.

18.     Despite this Court's opinion in *Wyeth v. Dudas*, the Director, on September 15, 2009, denied Pfizer's petition.  The PTO's decision denying Pfizer's reconsideration request is attached as Exhibit C.

## CLAIM FOR RELIEF

19.     The allegations of paragraphs 1-18 are incorporated in this claim for relief as if fully set forth.

20.     The patent term adjustment for the '362 patent, as determined by the Director under 35 U.S.C. § 154(b) and indicated on the face of the '362 patent, is 100 days.  (*See* Ex. A at 1).

21.     The Director's determination of the 100-day patent term adjustment is in error because the PTO failed to properly account for the period of time between the date that was three years after the actual filing date of the '334 application and the date that the application was issued as a patent ("the three year delay"), pursuant to 35 U.S.C. § 154(b)(1)(B), which did not overlap with the period of delay under 35 U.S.C. 154(b)(1)(A).  The correct patent term adjustment for the '362 patent is at least 207 days.

22.     The '334 application was filed on February 22, 2006, and the '362 patent was issued on June 9, 2009.

23.     The Plaintiffs are entitled to an adjustment of the term of the '362 patent under 35 U.S.C. § 154(b)(1)(A) of 197 days, which is the number of days attributable to PTO examination delay ("A Delay").  This "A Delay" is due to the failure of the PTO to mail an action under 35

U.S.C. § 132 not later than 14 months from the actual filing date of the application in addition to the delay from 4 months after a reply under 35 U.S.C. § 132 was received until the examiner acted by mailing a notice of allowance.  The "A Delay" period for the '334 application is the period between April 22, 2007 (14 months after the filing date of the '334 application) and October 22, 2007 (the mailing date of the PTO's First Office Action) in addition to the period between January 29, 2008 (4 months after a reply under 35 U.S.C. § 132 was received) and February 12, 2009 (the date the examiner acted by mailing a notice of allowance).

24.     The Plaintiffs are also entitled to an additional adjustment of the term of the '362 patent under 35 U.S.C. § 154(b)(1)(B), of 107 days, which is the number of days beginning on the date that was three years after the actual filing date of the '334 application (*i.e.*, February 22, 2009) and ending on the date that the '362 patent was granted (*i.e.*, June 9, 2009) ("B Delay"). *See* 35 U.S.C. § 154(b)(1)(B)(i).

25.     Section 154(b)(2)(A) of title 35, U.S.C., provides that "to the extent that periods of delay attributable to grounds specified in paragraph [(b)](1) overlap, the period of any adjustment … shall not exceed the actual number of days the issuance of the patent was delayed."  There is no overlap between the "A Delay" period (the time period running from April 22, 2007 to February 12, 2009) and the "B Delay" period (the time period running from February 22, 2009 to June 9, 2009) for the '362 patent.  Therefore, there is no period of overlap to be excluded from the patent term adjustment.

26.     The total period of PTO delay was 304 days, which is the sum of the "A Delay" (197 days) and the "B Delay" (107 days) periods minus the period of overlap (0 days).

27.     The '362 patent is not subject to a disclaimer of term.  Thus, the period of patent term adjustment for the '362 patent is not limited under 35 U.S.C. § 154(b)(2)(B).

28.     Under 35 U.S.C. § 154(b)(2)(C), the total period of PTO delay is to be reduced by the period of applicant delay, which the Director determined for the '362 patent was 97 days.

29.     Accordingly, the correct patent term adjustment to which Plaintiffs are entitled under 35 U.S.C. § 154(b)(1) and (2) is a net adjustment of 207 days, which is the sum of the "A Delay" and "B Delay" (197+ 107 = 304 days) reduced by the period of overlap between the "A Delay" and "B Delay" (0 days) and further reduced by the period of applicant delay (97 days).

30.     The Director erred in the determination of patent term adjustment for the '362 patent by erroneously treating the period of "B Delay" as overlapping with the "A Delay," and crediting only the greater of the two delays (*i.e.*, the "A Delay" of 197 days), instead of correctly crediting the sum of both the "A Delay" and "B Delay" periods (*i.e.*, 304 days) and subtracting any period of overlap (*i.e.*, 0 days).  Thus, the Director incorrectly determined that the net patent term adjustment for the '362 patent as <u>100 days</u> (197 days – 97 days = 100 days).  By this erroneous calculation, the Director has deprived the Plaintiffs of the full patent term adjustment to which they are entitled (calculated above as <u>207 days</u>).

31.     In its opinion in *Wyeth v. Dudas*, this Court explained the proper construction of the provisions of 35 U.S.C. § 154(b) for determining patent term adjustment.  580 F. Supp. 2d at 140, 142.  In accord with this Court's *Wyeth* decision, the patent term adjustment for the '362 patent is properly determined to be 207 days, as set forth above.

32.     The Director's determination that the '362 patent is entitled to only 100 days of patent term adjustment is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and in excess of statutory jurisdiction, authority, or limitation.

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

A.     Issue an Order changing the period of patent term adjustment for the '362 patent

term from 100 days to <u>207 days</u> and requiring the Director to revise the term of the '362 patent to

reflect the <u>207 day</u> patent term adjustment.

B.     Grant such other and further relief as the nature of the case may admit or require

and as may be just and equitable.

                                        Respectfully submitted,

                                        SIDLEY AUSTIN LLP


Dated:  December 2, 2009

                                        Jeffrey P. Kushan (Bar no. 461155)
                                        SIDLEY AUSTIN LLP
                                        1501 K Street, N.W.
                                        Washington, D.C. 20005
                                        Telephone:  (202) 736-8000
                                        Facsimile:  (202) 736-8711

                                        Attorney for Plaintiffs Pfizer Inc.
                                        and Pfizer Products Inc.

US007544362B1

(12) **United States Patent**       (10) **Patent No.:**     **US 7,544,362 B1**

Yoo et al.                          (45) **Date of Patent:**        **Jun. 9, 2009**

(54) **N PROTEIN MUTANTS OF PORCINE REPRODUCTIVE AND RESPIRATORY SYNDROME VIRUS**

(75) Inventors: **Dongwan Yoo**, Guelph (CA); **Changhee Lee**, Guelph (CA); **Jay Gregory Calvert**, Otsego, MI (US); **Siao-Kun Welch**, Kalamazoo, MI (US)

(73) Assignee: **Pfizer Inc.**, New York, NY (US)

( * ) Notice:     Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 100 days.

(21) Appl. No.: **11/359,334**

(22) Filed:      **Feb. 22, 2006**

**Related U.S. Application Data**

(60) Provisional application No. 60/656,523, filed on Feb. 25, 2005, provisional application No. 60/730,663, filed on Oct. 27, 2005.

(51) **Int. Cl.**
    *A61K 39/00*      (2006.01)
    *C12N 7/00*       (2006.01)
    *C12N 7/04*       (2006.01)
(52) **U.S. Cl.** .............. **424/204.1**; 536/23.72; 435/235.1; 435/236; 514/44
(58) **Field of Classification Search** ........................ None
    See application file for complete search history.

(56)               **References Cited**

U.S. PATENT DOCUMENTS

6,268,199 B1 *   7/2001   Meulenberg et al. ..... 435/235.1
2003/0049274 A1 *   3/2003   Meulenberg et al. ..... 424/204.1

OTHER PUBLICATIONS

Yang et al (Archives of Virology 144:525-546, 1999).*
Shen et al (Archives of Virology 145:871-883, 2000)].*

NCBI AF184212, Sep. 28, 2000.*
Le Gall et al (Virus Research 54:9-21, 1998).*
Lee, C., Calvert, J. G., Welch, S.-K. W., and Yoo, D. (2005). A DNA-launched reverse genetics system for porcine reproductive and respiratory syndrome virus reveals that homodimerization of the nucleocapsid protein is essential for virus infectivity. Virology 331, 47-62.
Rowland, R. R., Kervin, R., Kuckleburg, C., Sperlich, A., and Benfield, D. A. (1999). The localization of porcine reproductive and respiratory syndrome virus nucleocapsid protein to the nucleolus of infected cells and identification of a potential nucleolar localization signal, Virology 316, 135-145.
Rowland, R. R. R., Schneider, P., Fang, Y., Wootton, S., Yoo, D., and Benfield, D. A. (2003). Peptide domains involved in the localization of the porcine reproductive and respiratory syndrome virus nucleocapsid protein to the nucleolus. Virology 316(1), 135-145 (Abstract).
Rowland, R. R. R., and Yoo, D. (2003). Nucleolar-cytoplasmic shuttling of PRRSV nucleocapsid protein: a simple case of molecular mimicry or the complex regulation by nuclear import, nucleolar localization and nuclear export signal sequences. Virus Research 95, 23-33.
Wootton, S. K., Rowland, R. R. R., and Yoo, D. (2002). Phosphorylation of the porcine reproductive and respiratory syndrome virus nucleocapsid protein. Journal of Virology 76 (20), 10569-10576.

(Continued)

*Primary Examiner*—Mary E Mosher
(74) *Attorney, Agent, or Firm*—Lorraine B. Ling; Bruce Weintraub; E. Victor Donahue

(57)               **ABSTRACT**

The present invention provides a genetically modified PRRS virus, methods to make it and related polypeptides, polynucleotides and various components. Vaccines comprising the genetically modified virus and polynucleotides are also provided.

**19 Claims, 6 Drawing Sheets**



P129 Nucleocapsid                        ₄₁PGKKSKK₄₇ ... 123
P129-GG Nucleocapsid                     ₄₁PGGGNKK₄₇ ... 123



Mock        P129        P129-GG

**US 7,544,362 B1**

Page 2

OTHER PUBLICATIONS

Wootton, S. K., and Yoo, D. (2003). Homo-oligomerization of the porcine reproductive and respiratory syndrome virus nucleocapsid protein and the role of disulfide linkages. Journal of Virology 77(8), 4546-4557.

Yoo, D., Wootton, S. K., Li, G., Song, C., and Rowland, R. R. (2003). Colocalization and interaction of the porcine arterivirus nucleocapsid protein with the small nucleolar RNA-associated protein fibrillarin. Journal of Virology 77(22), 12173-12183.

Yoo, D., Welch, S.-K. W., Lee, C., and Calvert, J. G. (2004). Infectious clones of porcine reproductive and respiratory syndrome virus and their potential as vaccine vectors. Veterinary Immunology and Immunopathology 102, 143-154.

* cited by examiner

Figure 1



P129 Nucleocapsid

P129-GG Nucleocapsid



**Figure 2A**



| | 0 | 4 | 7 | 10 | 14 | 21 | 28 |
|---|---|---|---|---|---|---|---|
| ☐Uninfected (T01) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ■P129-GG (T02) | 0 | 7 | 3 | 1 | 0 | 0 | 0 |
| ▨P129-wt (T03) | 0 | 7 | 5 | 4 | 0 | 0 | 0 |

**Days post infection**

**Figure 2B**



| | 0 | 4 | 7 | 10 | 14 | 21 | 28 |
|---|---|---|---|---|---|---|---|
| Uninfected (T01) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| P129-GG (T02) | 0 | 16 | 99 | 7 | 0 | 0 | 0 |
| P129-wt (T03) | 0 | 84 | 173 | 6 | 0 | 0 | 0 |

**Days post infection**

**Figure 2C**



| | 0 | 4 | 7 | 10 | 14 | 21 | 28 |
|---|---|---|---|---|---|---|---|
| Uninfected (T01) | 0.01 | 0.01 | 0.01 | 0.01 | 0.01 | 0.02 | 0.05 |
| P129-GG (T02) | 0.01 | 0 | 0.19 | 1.27 | 1.79 | 2.12 | 2.31 |
| P129-wt (T03) | 0.01 | 0 | 0.12 | 0.8 | 1.55 | 1.72 | 1.76 |

**Days post infection**

**Figure 2D**



| | 0 | 4 | 7 | 10 | 14 | 21 | 28 |
|---|---|---|---|---|---|---|---|
| ■ P129-GG (T02) | 0.001 | 0.000 | 0.042 | 0.380 | 0.773 | 1.089 | 1.354 |
| △ P129-wt (T03) | 0.002 | 0.004 | 0.037 | 0.210 | 0.441 | 0.829 | 0.958 |

**Days post infection**

**Figure 2E**



| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| ■ P129-GG (T02) | 0 | 4.8 | 10.8 | 24.4 |
| △ P129-wt (T03) | 0 | 3.2 | 4.2 | 5.3 |

US 7,544,362 B1

1

# N PROTEIN MUTANTS OF PORCINE REPRODUCTIVE AND RESPIRATORY SYNDROME VIRUS

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of U.S. Provisional Patent Application Nos. 60/656,523 and 60/730,663 respectively filed on Feb. 25, 2005 and Oct. 27, 2005, which are incorporated herein in their entirety.

## FIELD OF THE INVENTION

The present invention provides a genetically modified PRRS virus and polynucleotides that encode it. Vaccines comprising the genetically modified virus and polynucleotides are also provided.

## BACKGROUND OF THE INVENTION

Porcine reproductive and respiratory syndrome (PRRS) is characterized by abortions, stillbirths, and other reproductive problems in sows and gilts, as well as respiratory disease in young pigs. The causative agent is the PRRS virus, a member of the family Arteriviridae and the order Nidovirales. Two distinct genotypes of the virus emerged nearly simultaneously in North America and in Europe in the late 1980's. PRRS virus is now endemic in nearly all swine producing countries, and is considered one of the most economically important diseases affecting the global pork industry.

Currently, commercial vaccines against PRRS include modified live and killed (inactivated) vaccines. Killed vaccines have been criticized for failing to induce robust immunity against heterologous strains of PRRS virus. Modified live vaccines are attenuated by serial passage in cell culture until virulence is lost. Modified live vaccines elicit broader protection than killed vaccines, but can suffer from a number of safety concerns including residual virulence, spread to non-vaccinated pigs, and genetic reversion to virulence. Because of antigenic changes that take place during the attenuation process, such vaccines can also lose some ability to protect against virulent field strains of PRRS virus. There is a pressing need therefore for new and improved modified live vaccines to protect against PRRS.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1**. (A) Drawing showing position and sequence of the NLS mutation within the P129 nucleocapsid protein. (B) Photomicrographs of mock infected, P129 infected, and P129-GG infected MARK-145 cells. Upper row shows typical plaques using phase contrast microscopy, while lower row shows fluorescent antibody staining of infected foci using FITC-conjugated monoclonal antibody SDOW17. Note the absence of nucleocapsid staining in the nuclei and nucleoli of cells infected with P129-GG.

FIG. **2**. (A) Number of pigs viremic on days 0 through 28 post infection by treatment groups (7 pigs per group). (B) Mean viral titer in the sera of pigs at days 0 through 28 post infection, by treatment group. (C) Mean ELISA antibody levels (S/P ratios) in the sera of pigs at days 0 through 28 post infection, by treatment group (D) a re-titration of the sera shown in FIG. 2C all samples were diluted 1:5 prior to assay in order to better distinguish differences in samples with high titers. (E) Mean serum neutralization titers in infected pigs during the four-week study

2

## BRIEF DESCRIPTION OF THE SEQUENCES

SEQ ID NO: 1 N protein residues 41-47 of the North American PRRSV isolate VR2332

SEQ ID NO: 2 VR2332NoLS region sequence

SEQ ID NO: 3 Lelystad NoLS region sequence

SEQ ID NO: 4 The NES region of the VR2332 isolate

SEQ ID NO: 5 The NES region of the Lelystad isolate

SEQ ID NO: 6 Amino acid sequence of N protein from P129 isolate

SEQ ID NO: 7 Nucleotide sequence of ORF 7 (encodes the N protein) from P129 isolate

SEQ ID NO: 8 Primer P SHUTTLE FWD

SEQ ID NO: 9 Primer P-SHUTTLE-REV

SEQ ID NO: 10 Mutagenic primer KK43/44GG-Fwd

SEQ ID NO: 11 Mutagenic primer KK43/44GG-REV

SEQ ID NO: 12 Table 8 deletion mutants. Amino acid sequence of NLS2 region of wt P129:

SEQ ID NO: 13 Table 8 deletion mutants. Nucleotide sequence of NLS2 region of wt P129

SEQ ID NO: 14 Table 8 deletion mutants. Amino acid sequence of NLS2 region of P129-GG:

SEQ ID NO: 15 Table 8 deletion mutants. Nucleotide sequence of NLS2 region of

SEQ ID NO: 16 Table 8 deletion mutants. Amino acid sequence of NLS2 region of P129-d43/44:

SEQ ID NO: 17 Table 8 deletion mutants. Nucleotide sequence of NLS2 region of P129-d43/44:

SEQ ID NO: 18 Table 8 deletion mutants. Amino acid sequence of NLS2 region of P129-d43/44/46:

SEQ ID NO: 19 Table 8 deletion mutants. Nucleotide sequence of NLS2 region of P129-d43/44/46:

SEQ ID NO: 20 Table 8 deletion mutants. Amino acid sequence of NLS2 region of P129-d44/46/47:

SEQ ID NO: 21 Table 8 deletion mutants. Nucleotide sequence of NLS2 region of P129-d44/46/47:

SEQ ID NO: 22 Table 8 deletion mutants. Amino acid sequence of NLS2 region of P129-d46/47/48:

SEQ ID NO: 23 Table 8 deletion mutants. Nucleotide sequence of NLS2 region of P129-d46/47/48

SEQ ID NO: 24 P129-d43/44F

SEQ ID NO: 25 P129-d43/44/46F

SEQ ID NO: 26 P129-d44/46/47F

SEQ ID NO: 27 P129-d46/47/48F

SEQ ID NO: 28 P129-d43/44R

SEQ ID NO: 29 P129-d43/44/46R

SEQ ID NO: 30 P129-d44/46/47R

SEQ ID NO: 31 P129-d46/47/48R

US 7,544,362 B1

**3**

## REFERENCES CITED

Doan, D. N. P., and Dokland, T. (2003). Structure of the nucleocapsid protein of porcine reproductive and respiratory syndrome virus. Structure 11(11), 1445-1451. Lee, C., Calvert, J. G., Welch, S.-K. W., and Yoo, D. (2005). A DNA-launched reverse genetics system for porcine reproductive and respiratory syndrome virus reveals that homodimerization of the nucleocapsid protein is essential for virus infectivity. Virology 331, 47-62.

Rowland, R. R., Kervin, R., Kuckleburg, C., Sperlich, A., and Benfield, D. A. (1999). The localization of porcine reproductive and respiratory syndrome virus nucleocapsid protein to the nucleolus of infected cells and identification of a potential nucleolar localization signal sequence. Virus Research 64(1), 1-12.

Rowland, R. R. R., Schneider, P., Fang, Y., Wootton, S., Yoo, D., and Benfield, D. A. (2003). Peptide domains involved in the localization of the porcine reproductive and respiratory syndrome virus nucleocapsid protein to the nucleolus. Virology 316(1), 135-145.

Rowland, R. R. R., and Yoo, D. (2003). Nucleolar-cytoplasmic shuttling of PRRSV nucleocapsid protein: a simple case of molecular mimicry or the complex regulation by nuclear import, nucleolar localization and nuclear export signal sequences. Virus Research 95(1-2), 23-33.

Wootton, S. K., Rowland, R. R. R., and Yoo, D. (2002). Phosphorylation of the porcine reproductive and respiratory syndrome virus nucleocapsid protein. Journal of Virology 76(20), 10569-10576.

Wootton, S. K., and Yoo, D. (2003). Homo-oligomerization of the porcine reproductive and respiratory syndrome virus nucleocapsid protein and the role of disulfide linkages. Journal of Virology 77(8), 4546-4557.

Yoo, D., Wootton, S. K., Li, G., Song, C., and Rowland, R. R. (2003). Colocalization and interaction of the porcine arterivirus nucleocapsid protein with the small nucleolar RNA-associated protein fibrillarin. Journal of Virology 77(22), 12173-12183.

Yoo, D., Welch, S.-K. W., Lee, C., and Calvert, J. G. (2004). Infectious clones of porcine reproductive and respiratory syndrome virus and their potential as vaccine vectors. Veterinary Immunology and Immunopathology 102, 143-154.

## SUMMARY OF THE INVENTION

The invention provides a genetically modified PRRS virus which has been modified within the NLS-2 region, NoLS region, and/or the NES region of the nucleocapsid (N) protein such that the resultant PRRS virus is attenuated. The subject invention further provides an infectious RNA molecule encoding the genetically modified virus and an isolated polynucleotide molecule comprising a DNA sequence encoding the infectious RNA molecule recited above.

The invention also provides a biologically pure culture of the viruses recited (i.e substantially free of other viruses) and it describes a viral vector comprising a DNA sequence encoding an infectious RNA molecule encoding a genetically modified PRRS virus as recited above.

The subject invention further provides a transfected host cell comprising any of the forgoing viruses, infectious RNA molecules, isolated polynucleotides or viral vectors recited above.

The subject invention further provides a vaccine for protecting a porcine animal from infection by a PRRS virus, which vaccine comprises a genetically modified PRRS virus as recited above; an infectious RNA molecule as recited

**4**

above encoding the genetically modified PRRS virus; an isolated polynucleotide molecule recited above, (optionally in the form of a plasmid), encoding the genetically modified PRRS virus; or the above-recited viral vector encoding the genetically modified PRRS virus; in an amount effective to produce immunoprotection against infection by a PRRS virus; and a carrier acceptable for veterinary use.

The invention further provides for reversion-resistant mutations of NLS-2. Preferred embodiments of the invention, especially for vaccine purposes, will contain additional nucleotide substitutions and/or deletions, designed to minimize the probability of reversion, and to minimize the probability of other flanking residues mutating to basic residues such as lysine and arginine and thereby restoring a functional NLS motif in the region.

The subject invention further provides a method for protecting a porcine animal from infection by a PRRS virus, which comprises vaccinating the animal with an amount of the above-recited vaccine that is effective to produce immunoprotection against infection by a PRRS virus.

The invention provides a method for making a genetically modified PRRS virus, which method comprises mutating the DNA sequence encoding an infectious RNA molecule which encodes the PRRS virus as described above, and expressing the genetically modified PRRS virus using a suitable expression system.

A PRRS virus, either wild-type or genetically modified, can be expressed from an isolated polynucleotide molecule using suitable expression systems generally known in the art, examples of which are described in this application. For example, the isolated polynucleotide molecule can be in the form of a plasmid capable of expressing the encoded virus in a suitable host cell in vitro, as is described in further detail below.

Other features of the invention will be evident upon review.

## DETAILED DESCRIPTION OF THE INVENTION

We disclose herein a method of attenuating a virulent PRRS virus by mutating or deleting the NLS-2 region, NoLS region, or the NES region in the nucleocapsid or N protein (encoded by ORF7) of the virus, an immunogenic composition comprising said attenuated virus, and a method of protecting swine from PRRS by vaccination with said immunogenic compositions. PRRS viruses that have been attenuated by this method should retain the antigenic characteristics of the virulent field strain and therefore afford more potent protection than vaccines based on cell culture attenuated viruses.

The nucleocapsid protein (N) of PRRSV, which is encoded by ORF7, is a small basic protein that is phosphorylated (Wootton, Rowland, and Yoo, 2002) and forms homodimers (Wootton and Yoo, 2003). The crystal structure has recently been determined (Doan and Dokland, 2003). The N protein appears to have multiple functions in the infected cell. In addition to forming a spherical capsid structure into which genomic RNA is packaged, a process that takes place in the cytoplasm, a portion of N protein is transported into the nucleus and specifically to the nucleolus of the infected cell. The amino acid sequence of N protein contains two nuclear localization signals (NLS), a nucleolar localization signal (NoLS), and a nuclear export signal (NES) that facilitate transport into the nucleus and nucleolus, and export from the nucleus, respectively (Rowland et al., 1999; Rowland et al., 2003; Rowland and Yoo, 2003). While in the nucleolus, the N protein interacts with the small nucleolar RNA-associated protein fibrillarin and may regulate rRNA processing and ribosome biogenesis in the infected cell in order to favor virus

US 7,544,362 B1

5

replication (Yoo et al., 2003). In the current invention, we show that mutations and deletions within the NLS, NoLS, and NES motifs of the N protein can result in viable viruses with aberrant nuclear trafficking, and that viruses containing such mutations are useful as vaccines against PRRS.

Viral mutations of this type are valuable, either alone or in combination with other attenuating mutations, for designing novel PRRS vaccines.

## DEFINITIONS

"An effective immunoprotective response", "immunoprotection", and like terms, for purposes of the present invention, mean an immune response that is directed against one or more antigenic epitopes of a pathogen so as to protect against infection by the pathogen in a vaccinated animal. For purposes of the present invention, protection against infection by a pathogen includes not only the absolute prevention of infection, but also any detectable reduction in the degree or rate of infection by a pathogen, or any detectable reduction in the severity of the disease or any symptom or condition resulting from infection by the pathogen in the vaccinated animal as compared to an unvaccinated infected animal. An effective immunoprotective response can be induced in animals that have not previously been infected with the pathogen and/or are not infected with the pathogen at the time of vaccination. An effective immunoprotective response can also be induced in an animal already infected with the pathogen at the time of vaccination.

A genetically modified PRRS virus is "attenuated" if it is less virulent than its unmodified parental strain. A strain is "less virulent" if it shows a statistically significant decrease in one or more parameters determining disease severity. Such parameters may include level of viremia, fever, severity of respiratory distress, severity of reproductive symptoms, or number or severity of lung lesions, etc.

"European PRRS virus" refers to any strain of PRRS virus having the genetic characteristics associated with the PRRS virus that was first isolated in Europe around 1991 (see, e.g., Wensvoort, G., et al., 1991, Vet. Q. 13:121-130). "European PRRS virus" is also sometimes referred to in the art as "Lelystad virus".

"Genetically modified", as used herein and unless otherwise indicated, means genetically mutated by human intervention, "mutated" means the replacement of an amino acid for another or the replacement of the coding nucleotide by another (e.g. C for a T), i.e., a so-called "substitution", preferably in a way that the encoded amino acid is changed, or any other mutation such as "deletion" or "insertion". The mutation is always carried out in the coding nucleotide sequence.

"Host cell capable of supporting PRRS virus replication" means a cell line which is capable of generating infectious PRRS when infected with a virus of the invention. Such cells include porcine alveolar macrophage cells and derivatives of porcine alveolar macrophage cells, MA-104 cells and derivatives of MA-104 cells, MARC-145 cells and derivatives of MARC-145 cells, and cells transfected with a receptor for the PRRS virus. Especially preferred for the demonstrating the small plaque phenotype of the invention are MARC-145 cells. The term "host cell capable of supporting PRRS virus replication" may also include cells within a live pig.

"Immune response" for purposes of this invention means the production of antibodies and/or cells (such as T lymphocytes) that are directed against, or assist in the decomposition or inhibition of, a particular antigenic epitope or particular antigenic epitopes.

6

"North American PRRS virus" means any PRRS virus having genetic characteristics associated with a North American PRRS virus isolate, such as, but not limited to the PRRS virus that was first isolated in the United States around the early 1990's (see, e.g., Collins, J. E., et al., 1992, J. Vet. Diagn. Invest. 4:117-126); North American PRRS virus isolate MN-1b (Kwang, J. et al., 1994, J. Vet. Diagn. Invest. 6:293-296); the Quebec LAF-exp91 strain of PRRS (Mardassi, H. et al., 1995, Arch. Virol. 140:1405-1418); and North American PRRS virus isolate VR 2385 (Meng, X.-J et al., 1994, J. Gen. Virol. 75:1795-1801). Genetic characteristics refer to genomic nucleotide sequence similarity and amino acid sequence similarity shared by North American PRRS virus strains.

"Open reading frame", or "ORF", as used herein, means the minimal nucleotide sequence required to encode a particular PRRS virus protein without an intervening stop codon.

"Porcine" and "swine" are used interchangeably herein and refer to any animal that is a member of the family Suidae such as, for example, a pig. The term "PRRS virus", as used herein, unless otherwise indicated, means any strain of either the North American or European PRRS viruses.

"PRRS" encompasses disease symptoms in swine caused by a PRRS virus infection. Examples of such symptoms include, but are not limited to, fever, abortion in pregnant females, respiratory distress, lung lesions, loss of appetite, and mortality in young pigs. As used herein, a PRRS virus that is "unable to produce PRRS" refers to a virus that can infect a pig, but which does not produce any disease symptoms normally associated with a PRRS infection in the pig.

PRRSV "N protein" or "ORF7" as used herein is defined as a polypeptide that is encoded by ORF7 of both the European and North American genotypes of PRRS virus. Examples of specific isotypes of N protein which are currently known are the 123 amino acid polypeptide of the North American PRRS prototype isolate VR2322 reported in Genbank by Accession numbers PRU87392, and the 128 residue N protein of European prototype PRRS isolate Lelystad reported in Genbank Accession number A26843.

"PRRSV N protein NLS-1 region" or "PRRSV ORF7 NLS-1 region" refers to a "pat4" or "nuc1" nuclear localization signal (Nakai & Kanehisa, 1992; Rowland & Yoo, 2003) containing four continuous basic amino acids (lysine or arginine), or three basic residues and a histidine or proline, located within about the first 15 N-terminal residues of the mature N protein. By way of example the VR2332 NLS-1 region sequence is KRKK and is located at residues 9-12, while the Lelystad isolate sequence is KKKK and is located at residues 10-13 of the N protein.

"PRRSV N protein NLS-2 region" or "PRRSV ORF7 NLS-2 region" refers to a second nuclear localization signal within the N protein that can take one of two forms. In North American PRRS viruses NLS-2 has a pattern which we have designated as the "pat8" motif, which begins with a proline followed within three residues by a five residue sequence containing at least three basic residues (K or R) out of five (a slight modification of the "pat7" or "nuc2" motif described by Nakai & Kanehisa, 1992; Rowland & Yoo, 2003). By way of example such a sequence is located at N protein residues 41-47 of the North American PRRSV isolate VR2332, and is represented by the sequence PGKKNKKK (SEQ ID NO: 1). In European PRRS viruses NLS-2 has a "pat4" or "nuc1" motif, which is a continuous stretch of four basic amino acids or three basic residues associated with histidine or proline (Nakai & Kanehisa, 1992; Rowland & Yoo, 2003). The NLS-2 of the European PRRSV isolate Lelystad is located at residues 47-50 and is represented by the sequence KKKK.

7

"PRRSV N protein NoLS region" or "PRRSV ORF7 NoLS region" refers to a nucleolar localization signal having a total length of about 32 amino acids and incorporating the NLS-2 region near its amino terminus. By way of example the VR2332 NoLS region sequence is located at residues 41-72 and is represented by the sequence PGKKNKKKNPEKPH-FPLATEDDVRHHFTPSER (SEQ ID NO: 2) (Rowland & Yoo, 2003) and the corresponding Lelystad isolate sequence is located at residues 42-73 and is represented by the sequence PRGGQAKKKKPEKPHFPLAAEDDIRHHLTQTER (SEQ ID NO: 3).

"PRRSV N protein NES region" or "PRRSV ORF7 NES region" refers to a nuclear export signal containing an LXL motif located near the carboxy terminal end of the N protein. The NES motif is X-R(2-5)-X-R2-X-R-Y where X is either leucine, isoleucine, or valine, Y either leucine, isoleucine, valine or alanine and R is any amino acid. As shown below the prototype North American and European isolates conform to this scheme with both having a 5-residue spacer.

"Transfected host cell" means practically any host cell which is described in U.S. Pat. No. 5,600,662 when transfected with PRRS virus RNA can produce a first round of PRRS virions. If further productive infection is desired a "host cell capable of supporting PRRS virus replication" as defined below would be used.

Polynucleotide molecules can be genetically mutated using recombinant techniques known to those of ordinary skill in the art, including by site-directed mutagenesis, or by random mutagenesis such as by exposure to chemical mutagens or to radiation, as known in the art." Said mutations may be carried out by standard methods known in the art, e.g. site directed mutagenesis (see e.g. Sambrook et al.(1989) Molecular Cloning: A Laboratory Manual, 2 (nd)ed., Cold Spring Harbor Laboratory Press, Cold Spring Harbor, N.Y.) of an infectious copy as described (e.g. Meulenberg et al., Adv. Exp. Med. Biol, 1998, 440:199-206).

Accordingly, the subject invention further provides a method for making a genetically modified North American PRRS virus, which method comprises mutating the DNA sequence encoding an infectious RNA molecule which encodes the PRRS virus as described above, and expressing the genetically modified PRRS virus using a suitable expression system. A genetically modified PRRS virus can be expressed from an isolated polynucleotide molecule using suitable expression systems generally known in the art, examples of which are described in this application. For example, the isolated polynucleotide molecule can be in the form of a plasmid capable of expressing the encoded virus in a suitable host cell in vitro, as is described in further detail below.

The North American PRRSV N protein sequences are highly conserved and the reported sequences have about 93-100% identity with each other. The North American and European PRRSV N proteins are about 57-59% identical and share common structural motifs.

By way of example the VR2332 NES region sequence is located at residues 106-117 and is represented by the sequence LPTHHTVRLIRV (SEQ ID NO: 4) (Rowland & Yoo, 2003) and the Lelystad isolate sequence is located at residues 107-118 and is represented by the sequence LPVAHTVRLIRV (SEQ ID NO: 5).

In the consensus below, which includes all sequences in North American PRRSV sequences in Genbank, the positions with a (*) are completely conserved. Alternative amino acids are shown under each position.

8

```
LPTHHTVRLIRV(SEQ ID NO: 4)
**VAQ******A
   Q
   V
   G
```

The numbering of amino acids referenced above is according to the database entries mentioned. In all other PRRS isolates, which might be numbered differently, identification of the proper regions are readily achieved by identifying preserved characteristic amino acids in a PRRS strain of interest and aligning it with a reference strain. It is an object of the present invention to modify a PRRS virus or its encoding nucleic acids such that one or more conserved regions are eliminated either by substitution, deletion, or insertion such that it results in an attenuated phenotype.

Deletions, insertions, or substitutions which eliminate the conserved NLS-2 motif, the NoLS region, or the NES motif are introduced by modification of polynucleotides in the encoding viruses of the invention. In a preferred embodiment, a deletion or insertion comprising 1, 2, 3, 4 or 5 amino acids results in the elimination of a conserved motif and results in an attenuated virus

---

Amino acids can be classified according to physical properties and contribution to secondary and tertiary protein structure. A conservative substitution is recognized in the art as a substitution of one amino acid for another amino acid that has similar properties. Exemplary conservative substitutions are set out in Table 1 (from WO 97/09433, page 10, published Mar. 13. 1997 (PCT/GB96/02197, filed Sep. 6, 1996)), immediately below. Table 1 Conservative Substitutions I

| SIDE CHAIN CHARACTERISTIC | AMINO ACID |
|---|---|
| Aliphatic | |
| Non-polar | G A P |
| | I L V |
| Polar-uncharged | C S T M |
| | N Q |
| Polar-charged | D E |
| | K R |
| Aromatic | H F W Y |
| Other | N Q D E |

Alternatively, conservative amino acids can be grouped as described in Lehninger, [Biochemistry, Second Edition; Worth Publishers, Inc. NY:NY (1975), pp. 71-77] as set out in Table 2, immediately below

TABLE 2

| Conservative Substitutions II | |
|---|---|
| SIDE CHAIN CHARACTERISTIC | AMINO ACID |
| Non-polar (hydrophobic) | |
| A. Aliphatic: | A L I V P |
| B. Aromatic: | F W |
| C. Sulfur-containing: | M |
| D. Borderline: | G |
| Uncharged-polar | |
| A. Hydroxyl: | S T Y |
| B. Amides: | N Q |
| C. Sulfhydryl: | C |
| D. Borderline: | G |

US 7,544,362 B1

<table>
<tr><td>9</td><td>10</td></tr>
</table>

TABLE 2-continued

| Conservative Substitutions II | |
| --- | --- |
| SIDE CHAIN CHARACTERISTIC | AMINO ACID |
| Positively Charged (Basic): | K R H |
| Negatively Charged (Acidic): | D E |

As still an another alternative, exemplary conservative substitutions are set out in Table 3, immediately below.

TABLE 3

| Conservative Substitutions III | |
| --- | --- |
| Original Residue | Exemplary Substitution |
| Ala (A) | Val, Leu, Ile |
| Arg (R) | Lys, Gln, Asn |
| Asn (N) | Gln, His, Lys, Arg |
| Asp (D) | Glu |
| Cys (C) | Ser |
| Gln (Q) | Asn |
| Glu (E) | Asp |
| His (H) | Asn, Gln, Lys, Arg |
| Ile (I) | Leu, Val, Met, Ala, Phe, |
| Leu (L) | Ile, Val, Met, Ala, Phe |
| Lys (K) | Arg, Gln, Asn |
| Met (M) | Leu, Phe, Ile |
| Phe (F) | Leu, Val, Ile, Ala |
| Pro (P) | Gly |
| Ser (S) | Thr |
| Thr (T) | Ser |
| Trp (W) | Tyr |
| Tyr (Y) | Trp, Phe, Thr, Ser |
| Val (V) | Ile, Leu, Met, Phe, Ala |

Preparation of Genetically Modified PRRS Virus

Recombinant DNA technology comprises extremely varied and powerful molecular biology techniques aimed at modifying nucleic acids at the DNA level and makes it possible to analyze and modify genomes at the molecular level. In this respect, viruses such as the PRRS virus because of the small size of its genome is particularly amenable to such manipulations. However, recombinant DNA technology is not immediately applicable to nonretroviral RNA viruses because these viruses do not encompass a DNA intermediate step in their replication. For such viruses infectious cDNA clones have to be developed before recombinant DNA technology can be applied to their genome to generate modified virus. Infectious clones can be derived through the construction of full-length (genomic length) cDNA (here used in the broad sense of a DNA copy of RNA and not only in the strict sense of a DNA copy of mRNA) of the virus under study after which an infectious transcript is synthesized in vivo in cells transfected with the full-length cDNA, but infectious transcripts can also be obtained by in vitro transcription from in vitro ligated partial-length cDNA fragments that comprise the full viral genome. In all cases, the transcribed RNA carries all the modifications that have been introduced to the cDNA and can be used to further passage the thus modified virus.

The preparation of an infectious clone of a European PRRS virus isolate or Lelystad virus is described in U.S. Pat. No. 6,268,199 which is hereby fully incorporated by reference. The preparation of an infectious cDNA clone of a North American PRRS virus isolate designated P129 (Lee et al., 2005; Yoo et al., 2004) is described in U.S. Pat. No. 6,500,662 which is hereby incorporated fully by reference. The sequence of P129 cDNA is disclosed in Genbank Accession Number AF494042 and in U.S. Pat. No. 6,500,662. Our work

below makes use of such an infectious clone which in the context of a plasmid is expressed by the CMV immediate early promoter and has been designated pCMV-S—P129 and is also disclosed within U.S. Pat. No. 6,500,662. As described in U.S. Pat. No. 6,500,662 there are other plasmids and promoters suitable for use here.

Given the complete sequence of any open reading frame of interest and the location of an amino acid residue of interest, one of ordinary skill need merely consult a codon table to design changes at the particular position desired.

A table of amino acids and their representative abbreviations, symbols and codons is set forth below in the following Table 4.

TABLE 4

| Amino acid | Abbrev. | Symbol | Codon(s) | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Alanine | Ala | A | GCA | GCC | GCG | GCU | |
| Cysteine | Cys | C | UGC | UGU | | | |
| Aspartic acid | Asp | D | GAC | GAU | | | |
| Glutamic acid | Glu | E | GAA | GAG | | | |
| Phenyl-alanine | Phe | F | UUC | UUU | | | |
| Glycine | Gly | G | GGA | GGC | GGG | GGU | |
| Histidine | His | H | CAC | CAU | | | |
| Isoleucine | Ile | I | AUA | AUC | AUU | | |
| Lysine | Lys | K | AAA | AAG | | | |
| Leucine | Leu | L | UUA | UUG | CUA | CUC | CUG | CUU |
| Methionine | Met | M | AUG | | | | |
| Asparagine | Asn | N | AAC | AAU | | | |
| Proline | Pro | P | CCA | CCC | CCG | CCU | |
| Glutamine | Gln | Q | CAA | CAG | | | |
| Arginine | Arg | R | AGA | AGG | CGA | CGC | CGG | CGU |
| Serine | Ser | S | AGC | AGU | UCA | UCC | UCG | UCU |
| Threonine | Thr | T | ACA | ACC | ACG | ACU | |
| Valine | Val | V | GUA | GUC | GUG | GUU | |
| Tryptophan | Trp | W | UGG | | | | |
| Tyrosine | Tyr | Y | UAC | UAU | | | |

Codons constitute triplet sequences of nucleotides in mRNA and their corresponding cDNA molecules. Codons are characterized by the base uracil (U) when present in a mRNA molecule but are characterized by base thymidine (T) when present in DNA. A simple change in a codon for the same amino acid residue within a polynucleotide will not change the sequence or structure of the encoded polypeptide. It is apparent that when a phrase stating that a particular 3 nucleotide sequence "encode(s)" any particular amino acid, the ordinarily skilled artisan would recognize that the table above provides a means of identifying the particular nucleotides at issue. By way of example, if a particular three nucleotide sequence encodes lysine, the table above discloses that the two possible triplet sequences are AAA and AAG. Glycine is encoded by GGA, GGC, GGT (GGU if in RNA) and GGG. To change a lysine to glycine residue in an encoded protein one might replace a AAA or AAG triplet with any of by GGA and GGC, GGT or GGG in the encoding nucleic acid. The coding sequence of the N or ORF7 protein from the P129 isolate is exemplified below.

US 7,544,362 B1

**11**

TABLE 5

Coding Sequence from N protein of P129 isolate

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| M | P | N | N | N | G | K | Q | Q | *K* | *K* | *K*[12] |
| ATG | CCA | AAT | AAC | AAC | GGC | AAG | CAG | CAA | AAG | AAA | AAG[36] |
| *K* | *G* | *N* | *G* | *Q* | *P* | *V* | *N* | *Q* | *L* | *C* | *Q*[24] |
| AAG | GGG | AAT | GGC | CAG | CCA | GTC | AAT | CAG | CTG | TGC | CAG[72] |
| M | L | G | K | I | I | A | Q | Q | N | Q | S[36] |
| ATG | CTG | GGT | AAA | ATC | ATC | GCC | CAG | CAA | AAC | CAG | TCC[108] |
| R | G | K | G | *P* | *G* | *K* | *K* | *S* | *K* | *K* | *K*[48] |
| AGA | GGC | AAG | GGA | CCG | GGC | AAG | AAG | AGT | AAG | AAG | AAA[144] |
| *N* | *P* | *E* | *K* | *P* | *H* | *F* | *P* | *L* | *A* | *T* | *E*[60] |
| AAC | CCG | GAG | AAG | CCC | CAT | TTT | CCT | CTA | GCG | ACC | GAA[288] |
| *D* | *D* | *V* | *R* | *H* | *H* | *F* | *T* | *P* | *G* | *E* | *R*[72] |
| GAT | GAC | GTC | AGG | CAT | CAC | TTC | ACC | CCT | GGT | GAG | CGG[324] |
| Q | L | C | L | S | S | I | Q | T | A | F | N[84] |
| CAA | TTG | TGT | CTG | TCG | TCG | ATC | CAG | ACT | GCC | TTT | AAC[252] |
| Q | G | A | G | T | C | T | L | S | D | A | Q[96] |
| CAG | GGC | GCT | GGA | ACT | TGT | ACC | CGT | TCA | GAT | TCA | GGG[288] |
| R | I | S | Y | T | V | E | F | S | *L* | *P* | *T*[108] |
| AGG | ATA | AGT | TAC | ACT | GTG | GAG | TTT | AGT | TTG | CCG | ACG[324] |
| *H* | *H* | *T* | *V* | *R* | *L* | *I* | *R* | *V* | *T* | *A* | *S*[120] |
| CAT | CAT | ACT | GTG | CGC | CTG | ATC | CGC | GTC | ACA | GCA | TCA[360] |
| P | S | A[123] | (SEQ ID NO: 6) | | | | | | | | |
| CCC | TCA | GCA[369] | (SEQ ID NO: 7) | | | | | | | | |

The construction of a mutant protein N polynucleotide sequence modified in the NLS-2 regions is demonstrated by way of illustrative example in Example 2.

It will be appreciated that mutations in the NLS-1, NoLS or NES regions can be accomplished with similar techniques and similar results.

Demonstration that a Genetically Modified PRRS Virus is Attenuated

To demonstrate that a particular genetically modified strain is attenuated an experiment as described below might be used.

At least 10 gilts per group are included in each trial, which are derived from a PRRSV-free farm. Animals are tested free of PRRS virus specific serum antibodies and negative for PRRSV. All animals included in the trial are of the same source and breed. The allocation of the animals to the groups is randomized.

Challenge is performed at day 90 of pregnancy with intranasal application of 1 ml PRRSV with $10^5$ TCID$_{50}$ per nostril. There are at least three groups for each test setup: One group for P129 challenge; one test group for challenge with the possibly attenuated virus; and one strict control group.

The study is deemed valid when the strict controls stay PRRSV-negative over the time course of the study and at least 25% less live healthy piglets are born in the P129 challenged group compared to the strict control group.

Attenuation, in other words less virulence, is defined as the statistical significant change of one or more parameters determining reproductive performance or other symptomology:

Significant reduction in at least one of the following parameters for the test group (possibly attenuated virus) compared to the unmodified parental strain infected group would be an indication of attenuation:
a) frequency of stillborns
b) abortion at or before day 112 of pregnancy

**12**

c) number of mummified piglets
d) number of less lively and weak piglets
e) preweaning mortality

Furthermore a significant increase in one of the following parameters for the test group compared the unmodified parental strain infected group is preferred:

f) number of piglets weaned per sow
g) number of live healthy piglets born per sow

In the alternative, respiratory symptoms and other symptoms of PRRSV infection could be examined to establish attenuation as described in Example 3 below

Vaccines

An attenuated strain is valuable for the formulation of vaccines. The present vaccine is effective if it protects a pig against infection by a PRRS virus. A vaccine protects a pig against infection by a PRRS virus if, after administration of the vaccine to one or more unaffected pigs, a subsequent challenge with a biologically pure virus isolate (e.g., VR 2385, VR 2386, P129 etc.) results in a lessened severity of any gross or histopathological changes (e.g., lesions in the lung) and/or of symptoms of the disease, as compared to those changes or symptoms typically caused by the isolate in similar pigs which are unprotected (i.e., relative to an appropriate control). More particularly, the present vaccine may be shown to be effective by administering the vaccine to one or more suitable pigs in need thereof, then after an appropriate length of time (e.g., 3 weeks), challenging with a large sample (10$^{(3-7)}$TCID$_{(50)}$) of a biologically pure PRRSV isolate. A blood sample is then drawn from the challenged pig after about one week, and an attempt to isolate the virus from the blood sample is then performed (e.g., see the virus isolation procedure exemplified in Experiment VIII below). Isolation of a large amount of the virus is an indication that the vaccine may not be effective, while isolation of reduced amounts of the virus (or no virus) is an indication that the vaccine may be effective.

Thus, the effectiveness of the present vaccine may be evaluated quantitatively (i.e., a decrease in the percentage of consolidated lung tissue as compared to an appropriate control group) or qualitatively (e.g., isolation of PRRSV from blood, detection of PRRSV antigen in a lung, tonsil or lymph node tissue sample by an immunoassay). The symptoms of the porcine reproductive and respiratory disease may be evaluated quantitatively (e.g., temperature/fever), semi-quantitatively (e.g., severity of respiratory distress [explained in detail below], or qualitatively (e.g., the presence or absence of one or more symptoms or a reduction in severity of one or more symptoms, such as cyanosis, pneumonia, lung lesions etc.).

An unaffected pig is a pig which has either not been exposed to a porcine reproductive and respiratory disease infectious agent, or which has been exposed to a porcine reproductive and respiratory disease infectious agent but is not showing symptoms of the disease. An affected pig is one which shows symptoms of PRRS or from which PRRSV can be isolated.

Vaccines of the present invention can be formulated following accepted convention to include acceptable carriers for animals, including humans (if applicable), such as standard buffers, stabilizers, diluents, preservatives, and/or solubilizers, and can also be formulated to facilitate sustained release. Diluents include water, saline, dextrose, ethanol, glycerol, and the like. Additives for isotonicity include sodium chlo-

13

ride, dextrose, mannitol, sorbitol, and lactose, among others. Stabilizers include albumin, among others. Other suitable vaccine vehicles and additives, including those that are particularly useful in formulating modified live vaccines, are known or will be apparent to those skilled in the art. See, e.g., Remington's Pharmaceutical Science, 18th ed., 1990, Mack Publishing, which is incorporated herein by reference.

Vaccines of the present invention can further comprise one or more additional immunomodulatory components such as, e.g., an adjuvant or cytokine, among others. Non-limiting examples of adjuvants that can be used in the vaccine of the present invention include the RIBI adjuvant system (Ribi Inc., Hamilton, Mont.), alum, mineral gels such as aluminum hydroxide gel, oil-in-water emulsions, water-in-oil emulsions such as, e.g., Freund's complete and incomplete adjuvants, Block copolymer (CytRx, Atlanta, Ga.), QS-21 (Cambridge Biotech Inc., Cambridge Mass.), SAF-M (Chiron, Emeryville Calif.), AMPHIGEN® adjuvant, saponin, Quil A or other saponin fraction, monophosphoryl lipid A, and Avridine lipid-amine adjuvant. Non-limiting examples of oil-in-water emulsions useful in the vaccine of the invention include modified SEAM62 and SEAM 1/2 formulations. Modified SEAM62 is an oil-in-water emulsion containing 5% (v/v) squalene (Sigma), 1% (v/v) SPAN® 85 detergent (ICI Surfactants), 0.7% (v/v) TWEEN® 80 detergent (ICI Surfactants), 2.5% (v/v) ethanol, 200 pg/ml Quil A, 100 [mgr]g/ml cholesterol, and 0.5% (v/v) lecithin. Modified SEAM 1/2 is an oil-in-water emulsion comprising 5% (v/v) squalene, 1% (v/v) SPAN® 85 detergent, 0.7% (v/v) Tween 80 detergent, 2.5% (v/v) ethanol, 100 μg/ml Quil A, and 50 μg/ml cholesterol. Other immunomodulatory agents that can be included in the vaccine include, e.g., one or more interleukins, interferons, or other known cytokines.

Vaccines of the present invention can optionally be formulated for sustained release of the virus, infectious RNA molecule, plasmid, or viral vector of the present invention. Examples of such sustained release formulations include virus, infectious RNA molecule, plasmid, or viral vector in combination with composites of biocompatible polymers, such as, e.g., poly(lactic acid), poly(lactic-co-glycolic acid), methylcellulose, hyaluronic acid, collagen and the like. The structure, selection and use of degradable polymers in drug delivery vehicles have been reviewed in several publications, including A. Domb et al., 1992, Polymers for Advanced Technologies 3: 279-292, which is incorporated herein by reference. Additional guidance in selecting and using polymers in pharmaceutical formulations can be found in texts known in the art, for example M. Chasin and R. Langer (eds) 1990, "Biodegradable Polymers as Drug Delivery Systems" in: Drugs and the Pharmaceutical Sciences, Vol. 45, M. Dekker, N.Y., which is also incorporated herein by reference. Alternatively, or additionally, the virus, plasmid, or viral vector can be microencapsulated to improve administration and efficacy. Methods for microencapsulating antigens are well-known in the art, and include techniques described, e.g., in U.S. Pat. No. 3,137,631; U.S. Pat. No. 3,959,457; U.S. Pat. No. 4,205,060; U.S. Pat. No. 4,606,940; U.S. Pat. No. 4,744,933; U.S. Pat. No. 5,132,117; and International Patent Publication WO 95/28227, all of which are incorporated herein by reference.

Liposomes can also be used to provide for the sustained release of virus, plasmid, or viral vector. Details concerning how to make and use liposomal formulations can be found in, among other places, U.S. Pat. No. 4,016,100; U.S. Pat. No. 4,452,747; U.S. Pat. No. 4,921,706; U.S. Pat. No. 4,927,637; U.S. Pat. No. 4,944,948; U.S. Pat. No. 5,008,050; and U.S. Pat. No. 5,009,956, all of which are incorporated herein by reference.

An effective amount of any of the above-described vaccines can be determined by conventional means, starting with a low dose of virus, plasmid or viral vector, and then increas-

14

ing the dosage while monitoring the effects. An effective amount may be obtained after a single administration of a vaccine or after multiple administrations of a vaccine. Known factors can be taken into consideration when determining an optimal dose per animal. These include the species, size, age and general condition of the animal, the presence of other drugs in the animal, and the like. The actual dosage is preferably chosen after consideration of the results from other animal studies.

One method of detecting whether an adequate immune response has been achieved is to determine seroconversion and antibody titer in the animal after vaccination. The timing of vaccination and the number of boosters, if any, will preferably be determined by a doctor or veterinarian based on analysis of all relevant factors, some of which are described above.

The effective dose amount of virus, infectious RNA molecule, plasmid, or viral vector, of the present invention can be determined using known techniques, taking into account factors that can be determined by one of ordinary skill in the art such as the weight of the animal to be vaccinated. The dose amount of virus of the present invention in a vaccine of the present invention preferably ranges from about $10^1$ to about $10^9$ pfu (plaque forming units), more preferably from about $10^2$ to about $10^8$ pfu, and most preferably from about $10^3$ to about $10^7$ pfu. The dose amount of a plasmid of the present invention in a vaccine of the present invention preferably ranges from about 0.1 μg to about 100 mg, more preferably from about 1 μg to about 10 mg, even more preferably from about 10 μg to about 1 mg. The dose amount of an infectious RNA molecule of the present invention in a vaccine of the present invention preferably ranges from about 0.1 to about 100 mg, more preferably from about 1 μg to about 10 mg, even more preferably from about 10 μg to about 1 mg. The dose amount of a viral vector of the present invention in a vaccine of the present invention preferably ranges from about $10^1$ pfu to about $10^9$ pfu, more preferably from about $10^2$ pfu to about $10^8$ pfu, and even more preferably from about $10^3$ to about $10^7$ pfu. A suitable dosage size ranges from about 0.5 ml to about 10 ml, and more preferably from about 1 ml to about 5 ml.

By way of example, vaccines may be delivered orally, parenterally, intradermally, subcutaneously, intramuscularly, intranasally or intravenously. Oral delivery may encompass, for example, adding the compositions to the feed or drink of the animals. Factors bearing on the vaccine dosage include, for example, the weight and age of the pig.

The present invention further provides a method of preparing a vaccine comprising a PRRS virus, infectious RNA molecule, plasmid, or viral vector described herein, which method comprises combining an effective amount of one of the PRRS virus, infectious RNA molecule, plasmid, or viral vector of the present invention, with a carrier acceptable for pharmaceutical or veterinary use.

In addition the live attenuated vaccine of the present invention can be modified as described in U.S. Pat. No. 6,500,662 to encode a heterologous antigenic epitope which is inserted into the PRRS viral genome using known recombinant techniques. Antigenic epitopes useful as heterologous antigenic epitopes for the present invention include antigenic epitopes from a swine pathogen other than PRRS virus which include, but are not limited to, an antigenic epitope from a swine pathogen selected from the group consisting of porcine parvovirus, porcine circovirus, a porcine rotavirus, swine influenza, pseudorabies virus, transmissible gastroenteritis virus, porcine respiratory coronavirus, classical swine fever virus, African swine fever virus, encephalomyocarditis virus, porcine paramyxovirus, *Actinobacillus pleuropneumoniae, Actinobacillus suis, Bacillus anthraci, Bordetella bronchiseptica, Clostridium haemolyticum, Clostridium perfringens,*

US 7,544,362 B1

15

*Clostridium tetani, Escherichia coli, Erysipelothdix rhusiopathiae, Haemophilus parasuis, Leptospira* spp., *Mycoplasma hyopneumoniae, Mycoplasma hyorhinis, Mycoplasma hyosynovia, Pasteurella multocida, Salmonella choleraesuis, Salmonella typhimurium, Streptococcus equismilis,* and *Streptococcus suis.* Nucleotide sequences encoding antigenic epitopes from the aforementioned swine pathogens are known in the art and can be obtained from public gene databases such as GenBank (http://www.ncbi.nlm.nih.gov/Web/Genbank/index.html) provided by NCBI.

Additional features and variations of the invention will be apparent to those skilled in the art from the entirety of this application, including the detailed description, and all such features are intended as aspects of the invention. Likewise, features of the invention described herein can be re-combined into additional embodiments that also are intended as aspects of the invention, irrespective of whether the combination of features is specifically mentioned above as an aspect or embodiment of the invention. Also, only such limitations which are described herein as critical to the invention should be viewed as such; variations of the invention lacking limitations which have not been described herein are critical are intended as aspects of the invention. It will be clear that the invention may be practiced otherwise than as particularly described in the foregoing description and examples.

Numerous modifications and variations of the present invention are possible in light of the above teachings and, therefore, are within the scope of the invention.

The present invention is further illustrated by, but not limited to, the following examples

EXAMPLE 1

Construction of Shuttle Plasmid
pTB-Shuttle-PRRSV-3997

A shuttle plasmid was constructed in order to facilitate the introduction of specific modifications to a full-length PRRS virus genomic cDNA clone. A 3,997 bp fragment, representing the extreme 3' end of the viral genome (nucleotide positions 11,504 to 15,416, including a 21 residue polyadenosine tail) and 84 bp of downstream vector sequences, was PCR-amplified. The PCR reaction included 5 ng of pCMV-S-P129 plasmid DNA (U.S. Pat. No. 6,500,662 B1), 300 ng of forward primer P-shuttle-Fwd (5'-ACTCAGTCTAAGTGCTG-GAAAGTTATG-3') (SEQ ID NO: 8): positions 11,504 to 11,530, 300 ng of reverse primer P-shuttle-Rev primers (5'-ATCTTATCATGTCTGGATCCCCGCGGC-3') (SEQ ID NO: 9): positions 15,500 to 15,475), 1 mM each of dCTP, dGTP, dATP, and dTTP, 1×PCR buffer [10 mM KCl, 10 mM $(NH_4)_2SO_4$, 20 mM Tris-HCl (pH 8.8), 2 mM $MgSO_4$, 0.1% Triton X-100], and 2.5 U of Pfu DNA polymerase (Stratagene) using the GeneAmp PCR system 2400 (Perkin Elmer). The reaction was heated up for 5 min at 95° C. and subjected to 35 cycles of amplification under the following conditions; denaturation at 95° C. for 30 sec, primer annealing at 55° C. for 1 min, and extension at 72° C. for 3 min. The PCR product was cloned into the pTrueBlue vector using the TrueBlue MicroCartridge™ PCR Cloning Kit XL (Genomics One; Buffalo, N.Y.) to create pTB-shuttle-PRRSV-3997.

EXAMPLE 2

Modification of the NLS-2 Sequence to Generate
P129-GG Virus

PCR-based site-directed mutagenesis was used to modify the nuclear localization signal 2(NLS-2) motif located at amino acid positions 41 to 47 of the nucleocapsid (N) protein.

16

Among North American genotype PRRS viruses, this NLS motif is generally PGKKNKK (as in the prototype isolate VR-2332 or the Canadian isolate PA-8), or a derivative thereof, such as PGKKSKK (found in isolates P129 and 93-47324). The presence of multiple positively charged lysine (K) or arginine (R) residues is believed to be important for a fully functional NLS signal. The lysine residues at positions 43 and 44 of N (nucleotide positions 14,999-15,004 of the P129 genome) were replaced by glycine residues using the shuttle plasmid and the mutagenic primer pair KK43/44GG-Fwd (5'-GGCAAGGGACCGGGA GGGGGAAATAAGAAGAAAAAC-3') (SEQ ID NO: 10)—: genome positions 14,984 to 15,019) and KK43/44GG-Rev (5'-GTTTTTCTTCTT ATTTCCCCCTCCCGGTCCCTTGCC-3') (SEQ ID NO: 11)—: genome positions 14,984 to 15,019), where underlines indicate codon changes for amino acid substitutions from KKS to GGN. PCR amplifications were carried out using 5 ng of pTB-shuttle-PRRSV-3997 plasmid DNA, 300 ng each of the forward and reverse primers; 1 mM concentrations each of dCTP, dGTP, dATP, and dTTP, 1×PCR buffer [10 mM KCl, 10 mM $(NH_4)_2SO_4$, 20 mM Tris-HCl (pH 8.8), 2 mM $MgSO_4$, 0.1% Triton X-100]; and 2.5 U of Pfu DNA polymerase (Stratagene). The samples were subjected to 16 cycles of amplification under the following conditions: denaturation at 94° C. for 30 s, primer annealing at 55° C. for 1 min, and primer extension at 68° C. for 12 min 30 sec. Following PCR cycling, the PCR-product was digested with 10 U of DpnI to remove the methylated plasmid DNA template. *E. coli* XL1-Blue cells were transformed by heat shock with 4 μl of the PCR-Dpn I digested reaction containing the mutated plasmids and plated on an LB agar plate containing ampicillin. Colonies were randomly picked and cultivated overnight. Plasmid DNA was prepared using a QIAprep spin miniprep kit (Qiagen). The presence of the desired mutation (PGGGNKK) was verified by nucleotide sequencing and the resulting plasmid was named pTB-shuttle-N-GG.

The shuttle plasmid carrying the GG mutation (pTB-shuttle-N-GG) and the wild type full-length genomic clone (pCMV-S—P129) each contain unique BsrG I and Spe I sites (at positions 1,192 and 3,963, and positions 12,692 and 15,463, respectively). After digestion with these two enzymes, the 2,772 bp BsrG I-Spe I fragment was gel-purified from pTB-shuttle-N-GG, and the 16,120 bp BsrG I-Spe I fragment was gel-purified from pCMV-S—P129. These two fragments were ligated using T4 DNA ligase (Invitrogen) to construct a GGN-modified full-length genomic cDNA clone. *E. coli* strain DH5-α was transformed with 10 μl of the ligation reaction. Bacterial colonies were selected from LB plates containing ampicillin and plasmid DNAs were prepared. Based on Xma I digestion patterns, full-length clones were selected. The selected clones were sequenced to confirm the presence of the GGN modification in the full-length genomic cDNA clone. One of the resulting plasmids was designated pCMV-S—P129-GG.

MARC-145 cells were grown in Dulbecco's modified Eagle medium (DMEM) supplemented with 8% fetal bovine serum (FBS; Gibco BRL), penicillin (100 U/ml), and streptomycin (50 μg/ml) at 37° C. with 5% $CO_2$. Cells were seeded in 35 mm-diameter dishes and grown to 70% confluency. The cells were transfected for 24 h with 2 μg of pCMV-S—P129-GG plasmid DNA using Lipofectin (Invitrogen). The transfected cells were incubated at 37° C. in DMEM supplemented with 8% FBS for 5 days. PRRSV-specific cytopathic effect (CPE) was observed from 3 days post-transfection and further spread to neighboring cells was seen by 5 days post-transfection. The specificity of CPE was confirmed by immunofluorescence cell staining using a rabbit antiserum for nonstructural proteins nsp2 and nsp3, and the N-specific MAb SDOW17 (see FIG. 1). The culture supernatants from trans-

US 7,544,362 B1

17

fected cells were harvested at 5 days post-transfection and designated 'P129-GG passage 1' (P1). The passage-1 virus was used to inoculate fresh Marc-145 cells and the 5-day harvest was designated 'passage-2' (P2). 'Passage-3' (P3) virus was prepared in the same way as P2. Each viral passage was stored in 1 ml aliquots at –80° C. until use. Each passage of P129-GG virus was titrated by plaque assay, and the titers were determined to be $1 \times 10^2$, $5 \times 10^2$, and $5 \times 10^3$ pfu/ml for passages 1, 2, and 3, respectively. Wild type P129 virus was generated from pCMV-S—P129 and titrated in parallel, yielding titers of $1 \times 10^3$, $1 \times 10^4$, and $5 \times 10^5$ pfu/ml for passages 1, 2, and 3 respectively.

EXAMPLE 3

Infection of Pigs with P129-GG Virus and Parental P129 Virus (Demonstration that the P129-GG Virus is Attenuated)

Twenty-one healthy, crossbred pigs without a history of disease caused by or vaccination against PRRSV and *Mycoplasma hyopneumoniae* were randomly assigned to 3 treatment groups of 7 pigs each. At approximately 6 weeks of age, T01 pigs received a placebo while T02 and T03 pigs received an intranasal challenge with 2.0 ml of virus stock diluted to $2.5 \times 10^4$ pfu/ml ($5.0 \times 10^4$ pfu/dose) of the genetically modified P129-GG virus (generated from plasmid pCMV-S—P129-GG) or parental P129 PRRS virus (generated from plasmid pCMV-S—P129), respectively. All pigs were observed daily for clinical signs including general condition, depression, loss of appetite, sneezing, coughing, and respiratory distress. Rectal temperatures and body weights were recorded. Blood samples were taken on Days 0, 4, 7, 10, 14, 21, and 28 for PRRSV isolation and serology. Necropsies were performed on Days 14 (2 pigs/group) and 28 (5 pigs/group), and tissue samples (lung and tonsil) were collected. Estimates of lung lesion severity and percent consolidation of each lung lobe were made. Pigs in groups T02 and T03 developed signs of a mild PRRS virus infection, shed virus in the serum, and seroconverted. Uninfected control pigs (T01) remained negative for serum viremia and negative for antibody to the PRRS virus.

Compared to pigs infected with P129 parental virus (T03), pigs infected with the P129-GG virus (T02) shed less virus in their serum (FIGS. 2a and 2b) and produced higher levels of anti-PRRS ELISA antibody (FIGS. 2C and 2D), and neutralizing antibody (FIG. 2e).

TABLE 6

| | | ELISA Antibody Levels (S/P) | | | | | |
|---|---|---|---|---|---|---|---|
| | day 0 | day 4 | day 7 | day 10 | day 14 | day 21 | day 28 |
| P129-wt | | | | | | | |
| pig 28 | 0.000 | 0.000 | 0.061 | 0.283 | 0.527 | 0.689 | 1.025 |
| pig 30 | 0.006 | 0.000 | 0.044 | 0.178 | 0.527 | 0.731 | 0.672 |
| pig 35 | 0.000 | 0.000 | 0.000 | 0.027 | 0.157 | 0.241 | 0.197 |
| pig 40 | 0.004 | 0.021 | 0.030 | 0.208 | 0.575 | 0.723 | 0.890 |
| pig 43 | 0.000 | 0.000 | 0.049 | 0.354 | 0.419 | 1.760 | 2.006 |
| mean | 0.002 | 0.004 | 0.037 | 0.210 | 0.441 | 0.829 | 0.958 |
| P129-GG | | | | | | | |
| pig 33 | 0.000 | 0.000 | 0.000 | 0.356 | 0.873 | 1.377 | 1.705 |
| pig 36 | 0.000 | 0.000 | 0.019 | 0.383 | 1.038 | 1.536 | 1.604 |
| pig 38 | 0.000 | 0.000 | 0.034 | 0.248 | 0.383 | 0.723 | 1.398 |
| pig 45 | 0.004 | 0.000 | 0.090 | 0.288 | 0.416 | 0.371 | 0.386 |
| pig 46 | 0.000 | 0.000 | 0.066 | 0.627 | 1.154 | 1.438 | 1.676 |
| mean | 0.001 | 0.000 | 0.042 | 0.380 | 0.773 | 1.089 | 1.354 |
| Means | 0 | 4 | 7 | 10 | 14 | 21 | 28 |

18

TABLE 6-continued

| | | ELISA Antibody Levels (S/P) | | | | | |
|---|---|---|---|---|---|---|---|
| | day 0 | day 4 | day 7 | day 10 | day 14 | day 21 | day 28 |
| P129-wt | 0.002 | 0.004 | 0.037 | 0.210 | 0.441 | 0.829 | 0.958 |
| P129-GG | 0.001 | 0.000 | 0.042 | 0.380 | 0.773 | 1.089 | 1.354 |

Serum neutralization titers were determined in both the T02 and T03 groups at 7, 14, 21 and 28 days post infection. The neutralizing titers were determined by TCID50 in 96 well plates in duplicate. In each well 200 pfu of wild type P129 virus in a volume of 100 µl was combined with 100 µl of a serial 2-fold dilution of sera (previously heat inactivated for 30 min at 56° C.). The mixture was incubated for 1 hr at 37 C, followed by infection of cells. The infected cells were incubated for 5 days and CPEs were determined. The data is presented below and shows that pigs infected with the mutant virus developed higher mean neutralizing titers than those infected with the wild type parent virus.

TABLE 7

| | Neutralizing Titers During Four Weeks of Infection (duplicate values) | | | |
|---|---|---|---|---|
| | Day 7 | Day 14 | Day 21 | Day 28 |
| P129-wt | | | | |
| Pig 28 | <2, <2 | <2, <2 | 4, 4 | 3.5 |
| Pig 30 | <2, <2 | 2, 8 | 2, 2 | 4 |
| Pig 35 | <2, <2 | 4, 4 | 8, 4 | 7.5 |
| Pig 40 | <2, <2 | 4, 4 | 2, 8 | 8 |
| Pig 43 | <2, <2 | 2, 4 | <2, 8 | 3.5 |
| Mean | <2 | 3.2 | 4.2 | 5.3 |
| P129-GG | | | | |
| Pig 33 | <2, <2 | 4, 8 | 8, 16 | 16 |
| Pig 36 | <2, <2 | 2, 2 | 16, 16 | 16 |
| Pig 38 | <2, <2 | 8, 4 | 8, 4 | 36 |
| Pig 45 | <2, <2 | 2, 2 | 4, 4 | 6 |
| Pig 46 | <2, <2 | 8, 8 | 16, 16 | 48 |
| Mean | <2 | 4.8 | 10.8 | 24.4 |

One of the hallmarks in PRRSV infection is the persistence of virus in tonsils. Therefore, tonsils were collected from all infected pigs and two mock-infected control pigs at the termination of the study (4 weeks post-infection) and examined for viral persistence by RT-PCR. The N gene was detectable by RT-PCR in all pigs infected with either GG virus or P129 virus, while tonsils from mock-infected pigs remained negative. This indicates that all infected pigs shed the virus at 4 weeks post-infection. To examine possible mutations in NLS of the N gene, PCR products from tonsils were sequenced.

In all five pigs, GG virus persisting in the tonsils was found to be mutated in the NLS-2 sequence by the introduction of an arginine at either position 43 or 44. Wild-type P129 virus from tonsils did not mutate and retained the wild-type NLS-2 sequence.

EXAMPLE 4

Reversion-Resistant Mutations of NLS-2

The P129-GG mutation described in Example 2 was created by changing six nucleotides. As seen in Example 3, this virus is capable of partial or full reversion and can regain the parental NLS-negative phenotype at a relatively high frequency due to random mutation and natural selection. Preferred embodiments of the invention, especially for vaccine purposes, would contain additional nucleotide substitutions and/or deletions, designed to minimize the probability of

US 7,544,362 B1

19

reversion, and to minimize the probability of other flanking residues mutating to basic residues such as lysine and arginine and thereby restoring a functional NLS motif in the region. Codons that require two or three separate nucleotide changes in order to mutate to codons encoding a basic residue are preferred over those that require only one change. Deletion mutations are very unlikely to revert, since a portion of the region has been removed. Alternative codons can be chosen for flanking amino acids, in order to reduce the chances of reacquiring a pat7, pat4, or other NLS motif by mutation. Examples of such "reversion resistant" mutations are shown in Table 6, and are intended to be representative rather than limiting. Given this information, other examples of reversion resistant mutations may be envisioned by one of ordinary skill in the art.

In Table 8, mutant virus P129-d43/44 is a deletion of amino acids 43 and 44. In addition, the serine codon at position 45 is changed from AGT to TCT to reduce the probability of it mutating to a lysine or arginine codon. Also, the asparagine codon at position 49 (AAC) is changed to a serine codon (TCC) for the same reason. Serine is found at position 49 in some naturally occurring field isolates, so should be well tolerated. A minimal pat 7 NLS motif (PGSKKKS) remains in this mutant, and may have partial NLS activity. Viruses with partial NLS activity are predicted to have phenotypes that are intermediate between wild type (parental) virus and complete NLS knockout mutants. Such viruses may be especially useful as vaccines.

20

Forward Primers (5'-3')

P129-d43/44 F (SEQ ID NO: 24)

GTCCAGAGGCAAGGGACCGGGATCTAA-GAAGAAATCCCCGGAG

P129-d43/44/46F (SEQ ID NO: 25)

GTCCAGAGGCAAGGGACCGGGATCTAA-GAAATCCCCGGAG

P129-d44/46/47F (SEQ ID NO: 26)

GCAAGGGACCGGGAAAGTCTAAATC-CCCGGAGAAGCCCC

P129-d46/47/48F (SEQ ID NO: 27)

GCAAGGGACCGGGAAAGAAATCTTC-CCCGGAGAAGCCCC

Reverse Primers (5'-3')

P129-d43/44 R (SEQ ID NO: 28)

CTCCGGGGATTTCTTCTTAGATCCCG-GTCCCTTGCCTCTGGAC

P129-d43/44/46R (SEQ ID NO: 29)

CTCCGGGGATTTCTTAGATCCCGGTC-CCTTGCCTCTGGAC

TABLE 8

Contemplated Deletion Mutants

| Seq | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| alt | | | | | | T | | | | | | | | | | | |
| alt | | | | | | Q | | D | M | I | | | | | | | |
| alt | | | | | N | N | I | N | N | E | K | | | G | | | |
| alt | V | R | | E | R | R | N | R | R | R | S | | S | D | | | |
| wtP129 (AA) | G | K | G | P | G | K | K | S | K | K | K | N | P | E | K | P | SEQ ID NO:12 |
| wtP129 (codon) | GGC | AAG | GGA | CCG | GGC | AAA | AAG | AGT | AAG | AAG | AAG | AAC | CCG | GAG | AAG | CCC | SEQ ID NO:13 |
| P129-GG (AA) | G | K | G | P | G | G | G | N | K | K | K | N | P | E | K | P | SEQ ID NO:14 |
| P129-GG (codon) | GGC | AAG | GGA | CCG | GGA | GGG | GGA | AAT | AAG | AAG | AAA | AAC | CCG | GAG | AAG | CCC | SEQ ID NO:15 |
| P129-d43/44 (AA) | G | K | G | P | G | - | - | S | K | K | K | S | P | E | K | P | SEQ ID NO:16 |
| P129-d43/44 (codon) | GGC | AAG | GGA | CCG | GGA | --- | --- | TCT | AAG | AAG | AAA | TCC | CCG | GAG | AAG | CCC | SEQ ID NO:17 |
| P129-d43/44/46 (AA) | G | K | G | P | G | - | - | S | - | K | K | S | P | E | K | P | SEQ ID NO:18 |
| P129-d43/44/46 (codon) | GGC | AAG | GGA | CCG | GGA | --- | --- | TCT | --- | AAG | AAA | TCC | CCG | GAG | AAG | CCC | SEQ ID NO:19 |
| P129-d44/46/47 (AA) | G | K | G | P | G | K | - | S | - | - | K | S | P | E | K | P | SEQ ID NO:20 |
| P129-d44/46/47 (codon) | GGC | AAG | GGA | CCG | GGA | AAG | --- | TCT | --- | --- | AAA | TCC | CCG | GAG | AAG | CCC | SEQ ID NO:21 |
| P129-d46/47/48 (AA) | G | K | G | P | G | K | K | S | - | - | - | S | P | E | K | P | SEQ ID NO:22 |
| P129-d46/47/48 (codon) | GGC | AAG | GGA | CCG | GGA | AAG | AAA | TCT | --- | --- | --- | TCC | CCG | GAG | AAG | CCC | SEQ ID NO:23 |

The letters in bold at the top above are alternative residues that are found in at least one NA PRRS virus.
The two underlined segments form a 5-base stem that may be important for negative strand synthesis.
4 and 5 residue deletions are also contemplated

The other three mutants shown in Table 8 (P129-d43/44/46, P129-d44/46/47, and P129-d46/47/48) are deletions of three amino acids, and also have the codon changes at positions 45 and 49 discussed above. These mutations lack an NLS motif and are predicted to have a complete knockout of NLS activity. These viruses are anticipated to be attenuated in pigs and especially useful as vaccines.

The forward and reverse primers for the mutations described in Table 8 are as follows:

P129-d44/46/47R (SEQ ID NO: 30)

GGGGCTTCTCCGGGGATTTAGACTTTC-CCGGTCCCTTGC

P129-d46/47/48R (SEQ ID NO: 31)

GGGGCTTCTCCGGGGAAGATTTCTTTC-CCGGTCCCTTGC

The descriptions and examples above demonstrate that the NLS-2 regions is not required for virus multiplication but is an important virulence factor for PRRSV, as demonstrated by

US 7,544,362 B1

21

the fact that the only virus persisting in tonsils has mutated. We also demonstrate that the NLS in the PRRSV N protein is positively correlated with higher neutralizing antibodies and higher ELISA titers. We thus have established that mutations eliminating the NLS-2 sequence motif result in an attenuated strain of PRRSV.

NUMBERED DESCRIPTION OF THE INVENTION

1. A composition comprising a PRRS infectious agent selected from the group consisting of: a.) a genetically modified PRRS virus comprising an N protein which has been modified in at least one conserved region selected from the group consisting of the NLS-2 region, NoLS region and the NES region such that the conserved region has been eliminated, and wherein the genetically modified PRRS virus is attenuated; b.) an infectious RNA molecule encoding the genetically modified PRRS virus of a.); and c.) an isolated polynucleotide molecule comprising a DNA sequence encoding the infectious RNA molecule of b.). 2. The composition of claim 1 which has been further modified to result in the elimination of the conserved NLS-1 region. 3. The composition of claim 1 wherein the conserved region has been eliminated by the introduction of a non-conservative amino acid substitution. 4. The composition of claim 1 or 2 wherein the conserved region has been at least partially deleted. 5. The composition of claim 1 wherein the conserved region is the NoLS region. 6. The composition of claim 1 wherein the conserved region is the NLS-2 region. 7. The composition of claim 1 wherein the conserved region is the NES region. 8. The composition of claim 1 wherein the PRRS virus is a North American PRRS virus. 9. The composition of claim 1 wherein the PRRS virus is a European PRRS virus. 10. The composition of claim 8 wherein the conserved region is the NLS-2 region. 11. The composition of claim 10 wherein residues 42 and 43 of the N protein are glycines. 12. The composition of claim 10 wherein residues 42 and 43 of the N protein are glycine and residue 44 is an asparagine. 13. The composition of claim 10 wherein the NLS-2 region has been

22

at least partially deleted. 14. The composition of claim 13 wherein at least one of residues 43 through 48 of the N protein have been deleted. 15. The composition of claim 14 wherein both residues 43 and 44 of the N protein have been deleted. 16. The composition of claim 14 wherein residues 43, 44, and 46 of the N protein have been deleted. The composition of claim 14 wherein residues 44, 46, and 47 of the N protein have been deleted. 17. The composition of claim 14 wherein residues 46, 47, and 48 of the N protein have been deleted. 18. The composition of claim 1 that contain additional nucleotide mutation, substitutions and/or deletions, designed to minimize the probability of reversion.

19. A vaccine for protecting a porcine animal from infection by a PRRS virus comprising the composition of any of claim 1 in an amount effective to produce immunoprotection against infection by a PRRS virus; and a carrier acceptable for veterinary use. 20. A method for protecting a porcine animal from infection by a PRRS virus, which comprises vaccinating the animal with an amount of the vaccine of claim 19 that is effective to produce immunoprotection against infection by a PRRS virus. 21. A transfected host cell comprising a composition according to any of claim 1.

22. A method for making a genetically modified and attenuated PRRS virus, which method comprises: a.) mutating a DNA sequence encoding an infectious RNA molecule which encodes a PRRS virus, to produce a genetically modified PRRS virus comprising an N protein which has been modified in an at least one conserved region selected from the group consisting of the NLS-2 region, NoLS region and the NES region such that the conserved region has been eliminated; b.) introducing the genetically modified PRRS virus into a host cell capable of supporting PRRS replication. 23. A method of claim 22 wherein the genetically modified PRRS virus is a North American PRRS virus. 24. A method of claim 22 wherein the genetically modified PRRS virus is a European PRRS virus. 25. The method of claim 22 wherein the host cell capable of supporting PRRS replication is a MARC-145 cell. 26. The method of claim 22 wherein the host cell capable of supporting PRRS replication is comprised within a live porcine animal.

---

SEQUENCE LISTING

```
<160> NUMBER OF SEQ ID NOS: 31

<210> SEQ ID NO 1
<211> LENGTH: 8
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 1

Pro Gly Lys Lys Asn Lys Lys Lys
1               5


<210> SEQ ID NO 2
<211> LENGTH: 32
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 2

Pro Gly Lys Lys Asn Lys Lys Lys Asn Pro Glu Lys Pro His Phe Pro
1               5                   10                  15

Leu Ala Thr Glu Asp Asp Val Arg His His Phe Thr Pro Ser Glu Arg
                20                  25                  30
```

US 7,544,362 B1

23 24

-continued

```
<210> SEQ ID NO 3
<211> LENGTH: 33
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 3

Pro Arg Gly Gly Gln Ala Lys Lys Lys Lys Pro Glu Lys Pro His Phe
1               5                   10                  15

Pro Leu Ala Ala Glu Asp Asp Ile Arg His His Leu Thr Gln Thr Glu
            20                  25                  30

Arg


<210> SEQ ID NO 4
<211> LENGTH: 12
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 4

Leu Pro Thr His His Thr Val Arg Leu Ile Arg Val
1               5                   10


<210> SEQ ID NO 5
<211> LENGTH: 12
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 5

Leu Pro Val Ala His Thr Val Arg Leu Ile Arg Val
1               5                   10


<210> SEQ ID NO 6
<211> LENGTH: 123
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 6

Met Pro Asn Asn Asn Gly Lys Gln Gln Lys Lys Lys Lys Gly Asn Gly
1               5                   10                  15

Gln Pro Val Asn Gln Leu Cys Gln Met Leu Gly Lys Ile Ile Ala Gln
            20                  25                  30

Gln Asn Gln Ser Arg Gly Lys Gly Pro Gly Lys Lys Ser Lys Lys Lys
        35                  40                  45

Asn Pro Glu Lys Pro His Phe Pro Leu Ala Thr Glu Asp Asp Val Arg
    50                  55                  60

His His Phe Thr Pro Gly Glu Arg Gln Leu Cys Leu Ser Ser Ile Gln
65                  70                  75                  80

Thr Ala Phe Asn Gln Gly Ala Gly Thr Cys Thr Leu Ser Asp Ser Gly
            85                  90                  95

Arg Ile Ser Tyr Thr Val Glu Phe Ser Leu Pro Thr His His Thr Val
            100                 105                 110

Arg Leu Ile Arg Val Thr Ala Ser Pro Ser Ala
            115                 120


<210> SEQ ID NO 7
<211> LENGTH: 369
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 7
```

US 7,544,362 B1

-continued

```
atgccaaata acaacggcaa gcagcaaaag aaaaagaagg ggaatggcca gccagtcaat      60

cagctgtgcc agatgctggg taaaatcatc gcccagcaaa accagtccag aggcaaggga     120

ccgggcaaga aagtaagaa gaaaaacccg gagaagcccc attttcctct agcgaccgaa      180

gatgacgtca ggcatcactt cacccctggt gagcggcaat tgtgtctgtc gtcgatccag     240

actgccttta accagggcgc tggaacttgt accctgtcag attcagggag gataagttac     300

actgtggagt ttagtttgcc gacgcatcat actgtgcgcc tgatccgcgt cacagcatca     360

ccctcagca                                                            369


<210> SEQ ID NO 8
<211> LENGTH: 27
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 8

actcagtcta agtgctggaa agttatg                                          27


<210> SEQ ID NO 9
<211> LENGTH: 27
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 9

atcttatcat gtctggatcc ccgcggc                                          27


<210> SEQ ID NO 10
<211> LENGTH: 36
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 10

ggcaagggac cgggagggg aaataagaag aaaaac                                 36


<210> SEQ ID NO 11
<211> LENGTH: 36
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 11

gttttcttc ttatttcccc ctcccggtcc cttgcc                                 36


<210> SEQ ID NO 12
<211> LENGTH: 16
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 12

Gly Lys Gly Pro Gly Lys Lys Ser Lys Lys Lys Asn Pro Glu Lys Pro
1               5                   10                  15


<210> SEQ ID NO 13
<211> LENGTH: 48
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 13

ggcaagggac cgggcaagaa aagtaagaag aaaaacccgg agaagccc                   48


<210> SEQ ID NO 14
<211> LENGTH: 16
<212> TYPE: PRT
```

US 7,544,362 B1

27                                                                                          28

-continued

<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 14

Gly Lys Gly Pro Gly Gly Gly Asn Lys Lys Lys Asn Pro Glu Lys Pro
1               5                   10                  15


<210> SEQ ID NO 15
<211> LENGTH: 48
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 15

ggcaagggac cgggaggggg aaataagaag aaaaacccgg agaagccc                 48


<210> SEQ ID NO 16
<211> LENGTH: 14
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 16

Gly Lys Gly Pro Gly Ser Lys Lys Lys Ser Pro Glu Lys Pro
1               5                   10


<210> SEQ ID NO 17
<211> LENGTH: 42
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 17

ggcaagggac cgggctctaa gaagaaatcc ccggagaagc cc                       42


<210> SEQ ID NO 18
<211> LENGTH: 13
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 18

Gly Lys Gly Pro Gly Ser Lys Lys Ser Pro Glu Lys Pro
1               5                   10


<210> SEQ ID NO 19
<211> LENGTH: 39
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 19

ggcaagggac cgggctctaa gaaatccccg gagaagccc                           39


<210> SEQ ID NO 20
<211> LENGTH: 13
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 20

Gly Lys Gly Pro Gly Lys Ser Lys Ser Pro Glu Lys Pro
1               5                   10


<210> SEQ ID NO 21
<211> LENGTH: 39
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 21

ggcaagggac cgggcaagtc taaatccccg gagaagccc                           39

US 7,544,362 B1

-continued

```
<210> SEQ ID NO 22
<211> LENGTH: 13
<212> TYPE: PRT
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 22

Gly Lys Gly Pro Gly Lys Lys Ser Ser Pro Glu Lys Pro
1               5                   10


<210> SEQ ID NO 23
<211> LENGTH: 39
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 23

ggcaagggac cgggcaagaa atcttccccg gagaagccc                    39


<210> SEQ ID NO 24
<211> LENGTH: 43
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 24

gtccagaggc aagggaccgg gatctaagaa gaaatccccg gag              43


<210> SEQ ID NO 25
<211> LENGTH: 40
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 25

gtccagaggc aagggaccgg gatctaagaa atccccggag                  40


<210> SEQ ID NO 26
<211> LENGTH: 39
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 26

gcaagggacc gggaaagtct aaatccccgg agaagcccc                   39


<210> SEQ ID NO 27
<211> LENGTH: 39
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 27

gcaagggacc gggaaagaaa tcttccccgg agaagcccc                   39


<210> SEQ ID NO 28
<211> LENGTH: 43
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 28

ctccgggat ttcttcttag atcccggtcc cttgcctctg gac               43


<210> SEQ ID NO 29
<211> LENGTH: 40
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 29
```

-continued

```
ctccggggat ttcttagatc ccggtccctt gcctctggac                    40


<210> SEQ ID NO 30
<211> LENGTH: 39
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 30

ggggcttctc cggggattta gactttcccg gtcccttgc                     39


<210> SEQ ID NO 31
<211> LENGTH: 39
<212> TYPE: DNA
<213> ORGANISM: Porcine reproductive and respiratory syndrome virus

<400> SEQUENCE: 31

ggggcttctc cgggaagat ttctttcccg gtcccttgc                      39
```

What is claimed is:

1. A composition comprising a PRRS virus infectious agent selected from the group consisting of:

a) an isolated genetically modified PRRS virus, comprising an N protein which has been modified in the NLS-2 region thereof compared to wild-type sequence, wherein the modification to the NLS-2 region of the N protein is in the pat8 or pat7 motif thereof and wherein the genetically modified PRRS virus is attenuated as a result of said modification to the N protein;

b) an infectious RNA molecule encoding the genetically modified PRRS virus of a); and

c) an isolated polynucleotide molecule comprising a DNA sequence encoding the infectious RNA molecule of b).

2. A composition comprising a PRRS virus infectious agent selected from the group consisting of:

a) an isolated genetically modified PRRS virus, comprising an N protein which has been modified in the NLS-1 region thereof compared to wild-type sequence, and wherein the genetically modified PRRS virus is attenuated as a result of said modification to the N protein;

b) an infectious RNA molecule encoding the genetically modified PRRS virus of a); and

c) an isolated polynucleotide molecule comprising a DNA sequence encoding the infectious RNA molecule of b).

3. The composition of claim 1, wherein a modification of the NLS-2 region of the N protein is a non-conservative amino acid substitution or an amino acid deletion.

4. The composition of claim 3, wherein residues 42 and 43 of the N protein are glycines.

5. The composition of claim 3 wherein residues 42 and 43 of the N protein are glycine and residue 44 is an asparagine.

6. The composition of claim 3 wherein at least one of residues 43 through 48 of the N protein have been deleted.

7. The composition of claim 3 wherein both residues 43 and 44 of the N protein have been deleted.

8. The composition of claim 3 wherein residues 43, 44 and 46 of the N protein have been deleted.

9. The composition of claim 3 wherein residues 44, 46 and 47 of the N protein have been deleted.

10. The composition of claim 3 wherein residues 46, 47, and 48 of the N protein have been deleted.

11. The composition of claim 3, wherein although a particular further amino acid in the NLS-2 region is not changed relative to wild type, the codon for said amino acid is changed to inhibit subsequent mutation of said codon to one encoding for a basic amino acid.

12. The composition of claim 3, wherein the codon for any amino acid in said NLS-2 region has been altered to inhibit subsequent mutation of said codon to one encoding for a basic amino acid.

13. The composition of claim 12, wherein serine 45 is encoded by TCT and not AGT.

14. The composition of claim 12, wherein asparagine 49 encoded from AAC is replaced by serine encoded from TCC.

15. The composition of claim 1 wherein the encoding sequence of the NLS-2 region of the N protein of said PRRS virus further comprises an additional nucleotide mutation, substitution, and/or deletion, designed to minimize the probability of reversion.

16. A composition comprising a North American PRRS virus infectious agent selected from the group consisting of:

a) an isolated genetically modified PRRS virus, comprising an N protein which has been modified in the NLS-2 region thereof compared to wild-type sequence, wherein the modification to the NLS-2 region of the N protein is in the pat8 or pat7 motif thereof, and wherein the genetically modified PRRS virus is attenuated as a result of said modification to the N protein;

b) an infectious RNA molecule encoding the genetically modified PRRS virus of a); and

c) an isolated polynucleotide molecule comprising a DNA sequence encoding the infectious RNA molecule of b).

17. A vaccine for protecting a porcine animal from infection by a PRRS virus comprising the composition of claim 1, in an amount effective to produce immunoprotection against infection by a PRRS virus; and a carrier acceptable for veterinary use.

18. A vaccine for protecting a porcine animal from infection by a PRRS virus comprising the composition of claim 16, in an amount effective to produce immunoprotection against infection by a PRRS virus; and a carrier acceptable for veterinary use.

19. A vaccine for protecting a porcine animal from infection by a PRRS virus comprising the composition of claim 2, in an amount effective to produce immuno-protection against infection by a PRRS virus; and a carrier acceptable for veterinary use.

* * * * *

Attorney Docket No. PC32632A

I hereby certify that this correspondence is being deposited with the United States Postal Service as first-class mail in an envelope addressed to Mailstop Petition,Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on this 17 day of July 2009..

_(Signature of person mailing)_
Victor Donahue

_(Typed or printed name of person)_

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF:   Dongwan Yoo, et al.          :

APPLICATION NO.: **PATENT 7,544,362** (11/359,334)   :   Examiner: Mosher, Mary

FILING DATE:     February 22, 2006                    :   Group Art Unit: 1648

TITLE:     N Protein Mutants of Porcine Reproductive :
           and Respiratory Syndrome Virus

Commissioner for Patents, Mailstop Petition
P.O. Box 1450
Alexandria, VA. 22313-1450

Sir:

### Request for Redetermination of Patent Term Adjustment under 37 CFR 1.705(d) / 1.18(e)

The above-identified application granted as U.S. Patent 7,544,362 on **June 9, 2009**, following the mailing of a Notice of Allowance (copy attached) on **February 12, 2009** which contained a USPTO preliminary calculation of 100 days of Patent Term Adjustment, effective as of the mailing date of the Notice. The period of Adjustment, as calculated by the Office up through the mailing of the Notice of Allowance appears to be correct and Applicant did not request reconsideration under 37 CFR 1.705(b). The Issue fee herein was promptly tendered on **February 27, 2009** and cannot be reasonably construed to have delayed issuance of the patent.

The present request is brought under 37 CFR 1.702(b) "failure of issue the patent within three years of the actual filing date of the application" [June 9, 2009 rather than being no later than February 23, 2009], and this Petition is timely under 37 CFR 1.705(d) as pertaining to issues that can only be evaluated following actual grant of the Patent.

In regard of the statement of facts required under 37 CFR 1.705(b)(2), Patentee reports as follows.

The correct patent term adjustment is believed to be 207 days (304 days credit minus 97 days debit) rather than 100 days as reported by the Office (197 days credit minus 97 days debit) whereinby the 107 day difference (February 23, 2009 to June 9, 2009) is solely

allocated to the days beyond a period of three years for issuance of the patent.

As aforementioned, the Office calculation otherwise appears to be correct and is presumably based on 183 days credit (time to first action) plus 14 days credit (delay by the Office in responding to Applicant's Amendment in order to mail the Notice of Allowance), minus 97 days of prosecution delay attributed to Applicant. The patent is not subject to a terminal disclaimer, and the applicant delay of 97 days (i.e. a three month extension of time plus 7 days for Office receipt of first class mail) is not contested. There are no circumstances whereby the Applicant "failed to engage in reasonable efforts to conclude processing or examination".

The Patent Office has not articulated to the Patentee any specific basis for failure to credit the additional 107 days of PTA, and therefore, without being limited as to explanation, it appears that the Office has somehow improperly applied 37 CFR 1.703(f) "actual delay limitation" to deny application of the additional credit. However, clearly in accord with the meaning of subsection(f), there are _zero_ actual days of overlap among _any_ of the periods of delay that fall within the specified grounds (under section 702), and all events that lead to calculable events are separated from each other and precede, without overlap, the actual issuance of the patent. This view is in accord with the decision reached in _Wyeth v Dudas_, No 07-1492, DCDC, decided December 30, 2008.

## Conclusion

The required Petition Fee under 37 CFR section 1.18(e) of $200 should be charged to Applicant's Deposit Account No. 16-1445, to include any other fee or fee amount that the Office deems is necessary.   An early and favorable action is respectfully requested.

Respectfully submitted,

Date: _7/17/09_

_U L R__

E. Victor Donahue, Ph.D.
Attorney for Applicant(s)
Reg. No. 35,492

Pfizer, Inc
Patent Department, 2th Floor
150 East 42nd Street
New York, NY 10017-5755
(212) 733-2739

Attorney Docket No. PC32632A



I hereby certify that this correspondence is being deposited with the United States Postal Service as first-class mail in an envelope addressed to: Mailstop Petition,Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on this 17 day of July 2009..

By _____

. (Signature of person mailing)
Victor Donahue

_____
(Typed or printed name of person)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF:   Dongwan Yoo, et al.                    :

APPLICATION NO.: **PATENT 7,544,362** (11/359,334)   :      Examiner: Mosher, Mary

FILING DATE:          February 22, 2006                    :      Group Art Unit: 1648

TITLE:          N Protein Mutants of Porcine Reproductive :
                and Respiratory Syndrome Virus

Commissioner for Patents, Mailstop Petition
P.O. Box 1450
Alexandria, VA. 22313-1450

Sir:

### Request for Redetermination of Patent Term Adjustment under 37 CFR 1.705(d) / 1.18(e)

The above-identified application granted as U.S. Patent 7,544,362 on **June 9, 2009**, following the mailing of a Notice of Allowance (copy attached) on **February 12, 2009** which contained a USPTO preliminary calculation of 100 days of Patent Term Adjustment, effective as of the mailing date of the Notice. The period of Adjustment, as calculated by the Office up through the mailing of the Notice of Allowance appears to be correct and Applicant did not request reconsideration under 37 CFR 1.705(b). The Issue fee herein was promptly tendered on **February 27, 2009** and cannot be reasonably construed to have delayed issuance of the patent.

The present request is brought under 37 CFR 1.702(b) "failure of issue the patent within three years of the actual filing date of the application" [June 9, 2009 rather than being no later than February 23, 2009], and this Petition is timely under 37 CFR 1.705(d) as pertaining to issues that can only be evaluated following actual grant of the Patent.

In regard of the statement of facts required under 37 CFR 1.705(b)(2), Patentee reports as follows.

The correct patent term adjustment is believed to be 207 days (304 days credit minus 97 days debit) rather than 100 days as reported by the Office (197 days credit minus 97 days debit) whereinby the 107 day difference (February 23, 2009 to June 9, 2009) is solely

1

allocated to the days beyond a period of three years for issuance of the patent.

As aforementioned, the Office calculation otherwise appears to be correct and is presumably based on 183 days credit (time to first action) plus 14 days credit (delay by the Office in responding to Applicant's Amendment in order to mail the Notice of Allowance), minus 97 days of prosecution delay attributed to Applicant. The patent is not subject to a terminal disclaimer, and the applicant delay of 97 days (i.e. a three month extension of time plus 7 days for Office receipt of first class mail) is not contested. There are no circumstances whereby the Applicant "failed to engage in reasonable efforts to conclude processing or examination".

The Patent Office has not articulated to the Patentee any specific basis for failure to credit the additional 107 days of PTA, and therefore, without being limited as to explanation, it appears that the Office has somehow improperly applied 37 CFR 1.703(f) "actual delay limitation" to deny application of the additional credit. However, clearly in accord with the meaning of subsection(f), there are zero actual days of overlap among any of the periods of delay that fall within the specified grounds (under section 702), and all events that lead to calculable events are separated from each other and precede, without overlap, the actual issuance of the patent. This view is in accord with the decision reached in *Wyeth v Dudas*, No 07-1492, DCDC, decided December 30, 2008.

## Conclusion

The required Petition Fee under 37 CFR section 1.18(e) of $200 should be charged to Applicant's Deposit Account No. 16-1445, to include any other fee or fee amount that the Office deems is necessary. An early and favorable action is respectfully requested.

Respectfully submitted,

Date: _____7/17/09_____

_____ U. N. _____

E. Victor Donahue, Ph.D.
Attorney for Applicant(s)
Reg. No. 35,492

Pfizer, Inc
Patent Department, 2th Floor
150 East 42nd Street
New York, NY 10017-5755
(212) 733-2739



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

25533   7590   02/12/2009

PHARMACIA & UPJOHN
7000 Portage Road
KZO-300-104
KALAMAZOO, MI 49001



| EXAMINER |  |
| --- | --- |
| MOSHER, MARY | |
| ART UNIT | PAPER NUMBER |
| 1648 | |

DATE MAILED: 02/12/2009

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 11/359,334 | 02/22/2006 | Dongwan Yoo | PC32632A | 1171 |

TITLE OF INVENTION: N PROTEIN MUTANTS OF PORCINE REPRODUCTIVE AND RESPIRATORY SYNDROME VIRUS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 05/12/2009 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

## HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** _Mail_   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
_or Fax_   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

25533      7590      02/12/2009

PHARMACIA & UPJOHN
7000 Portage Road
KZO-300-104
KALAMAZOO, MI 49001

_(Stamp: OIPE  JUL 20 2009  PATENT & TRADEMARK OFFICE  IMP35)_

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/359,334 | 02/22/2006 | Dongwan Yoo | PC32632A | 1171 |

TITLE OF INVENTION: N PROTEIN MUTANTS OF PORCINE REPRODUCTIVE AND RESPIRATORY SYNDROME VIRUS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 05/12/2009 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| MOSHER, MARY | 1648 | 424-204100 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,     1 _____

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.     2 _____
     3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.     ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/359,334 | 02/22/2006 | Dongwan Yoo | PC32632A | 1171 |

25533          7590          02/12/2009

PHARMACIA & UPJOHN
7000 Portage Road
KZO-300-104
KALAMAZOO, MI 49001

| EXAMINER |
|---|
| MOSHER, MARY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1648 | |

DATE MAILED: 02/12/2009

*(stamp: O I P E — JUL 2 0 2009 — PATENT & TRADEMARK OFFICE — IAP35)*

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 100 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 100 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702.  Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101   or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Notice of Allowability*** | 11/359,334 | YOO ET AL. | |
| | Examiner | Art Unit | |
| | Mary E. Mosher | 1648 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>9/29/08</u>.

2. ☒ The allowed claim(s) is/are <u>1 and 27-44</u>.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

  * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>4/27/06</u>

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☒ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

Application/Control Number: 11/359,334                                    Page 2
Art Unit: 1648

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview

with Victor Donahue on January 30, 2009.


The application has been amended as follows:

Claim 44 has been amended to depend from claim 27.


A corrected version of the 1449 form, filed 4/27/2006 and previously considered,

is included with this action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Mary E. Mosher whose telephone number is 571-272-

0906. The examiner can normally be reached on varying dates and times; please leave

a message.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Bruce Campell can be reached on 571-272-0974. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 11/359,334                                    Page 3
Art Unit: 1648

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Mary E Mosher/
Primary Examiner, Art Unit 1648

1/30/09



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

PHARMACIA & UPJOHN
7000 Portage Road
KZO-300-104
KALAMAZOO MI 49001

**COPY MAILED**

SEP **1 5** 2009

**OFFICE OF PETITIONS**

In re Patent No. 7,544,362        :
Yoo et al.                        :
Issue Date: June 9, 2009          :
Application No. 11/359,334        : DECISION ON REQUEST FOR
Filed: February 22, 2006          : RECONSIDERATION OF
Attorney Dkt. No. PC32632A        : PATENT TERM ADJUSTMENT
Title: N Protein Mutants of       :
Porcine Reproductive and          :
Respiratory Syndrome Virus        :
                                  :
                                  :

This is in response to the "Application For Patent Term
Adjustment Determination Under 37 CFR 1.705(d)/1.18(e)" filed
July 20, 2009. Patentees request that the patent term adjustment
be changed from 100 days to 207 days.

The request for reconsideration of patent term adjustment is
**DISMISSED**.

On June 9, 2009, the above-identified application matured into
US Patent No. 7,544,362 with a patent term adjustment of 100
days. This request for reconsideration of patent term
adjustment (including the required fee) was timely filed within
two months of the issue date of the patent. See 37 CFR 1.705(d).

Patentees request recalculation of the patent term adjustment
based on the decision in Wyeth v. Dudas, 580 F. Supp. 2d 138, 88
U.S.P.Q. 2d 1538 (D.D.C. 2008). Patentees assert that pursuant
to Wyeth, a PTO delay under 35 U.S.C. §154(b)(1)(A) overlaps
with a delay under 35 U.S.C. §154(b)(1)(B) only if the delays
"occur on the same day." Patentees maintain that the period of
adjustment due to the Three Year Delay by the Office, pursuant
to 37 CFR § 1.703(b), 107 days, does not overlap with the 197
day period of adjustment due to examination delay, pursuant to
37 CFR §1.702(a), as these periods do not occur on the same day.

Patent No. 7,544,362   Application No. 11/359,334        Page 2

Thus, patentees request that the determination of patent term
adjustment be increased by 107 days to a total of two hundred
seven (207) days (107 + 197- 97).

Patentees submit that the total period of adjustment for Office
delay is 304 days (the sum of the period of three-year delay
(107 days) and the period of examination delay (197 days). As
such, patentees assert entitlement to a patent term adjustment
of 207 days (107 days *plus* 197 days less 97 days of applicant
delay).

The Office finds that as of the issuance of the patent on June
9, 2009, the application was pending three years and 107 days
after its filing date. An entry of a period of adjustment of 197
days was entered for Office delay. Further, an undisputed
reduction of 97 days for applicants' failure to engage in
reasonable efforts to conclude prosecution was taken. At issue
is whether patentees should accrue 107 days of patent term
adjustment for the Office taking in excess of three years to
issue the patent, as well as 197 days for Office failure to take
certain actions within specified time frames (or examination
delay).

The Office contends that 107 days overlap. 35 U.S.C.
154(b)(2)(A) limits the adjustment of patent term, as follows:

> to the extent that the periods of delay attributable to
> grounds specified in paragraph (1) overlap, the period of
> any adjustment granted under this subsection shall not
> exceed the actual number of days the issuance of the
> patent was delayed.

Likewise, 37 CFR 1.703(f) provides that:

> To the extent that periods of delay attributable to the
> grounds specified in §1.702 overlap, the period of
> adjustment granted under this section shall not exceed the
> actual number of days the issuance of the patent was
> delayed.

As explained in *Explanation of 37 CFR 1.703(f) and of the United
States Patent and Trademark Office Interpretation of 35 U.S.C.
154(b)(2)(A)*, 69 Fed. Reg. 34283 (June 21, 2004), the Office
interprets 35 U.S.C. 154(b)(2)(A) as permitting either patent
term adjustment under 35 U.S.C. 154(b)(1)(A)(i)-(iv), or patent

Patent No. 7,544,362  Application No. 11/359,334        Page 3

term adjustment under 35 U.S.C. 154(b)(1)(B), but not as
permitting patent term adjustment under both 35 U.S.C.
154(b)(1)(A)(i)-(iv) and 154(b)(1)(B).  Accordingly, the Office
implements the overlap provision as follows:

> If an application is entitled to an adjustment under 35
> U.S.C. 154(b)(1)(B), the entire period during which the
> application was pending (except for periods excluded under
> 35 U.S.C. 154(b)(1)(B)(i)-(iii)), and not just the period
> beginning three years after the actual filing date of the
> application, is the period of delay under 35 U.S.C.
> 154(b)(1)(B) in determining whether periods of delay
> overlap under 35 U.S.C. 154(b)(2)(A).  Thus, any days of
> delay for Office issuance of the patent more than 3 years
> after the filing date of the application, which overlap
> with the days of patent term adjustment accorded prior to
> the issuance of the patent will not result in any
> additional patent term adjustment.  See 35 U.S.C.
> 154(b)(1)(B), 35 U.S.C. 154(b)(2)(A), and 37 CFR
> § 1.703(f).  See *Changes to Implement Patent Term
> Adjustment Under Twenty Year Term; Final Rule*, 65 Fed. Reg.
> 54366 (Sept. 18, 2000).  See also *Revision of Patent Term
> Extension and Patent Term Adjustment Provisions; Final
> Rule*, 69 Fed. Reg. 21704 (April 22, 2004), 1282 Off. Gaz.
> Pat. Office 100 (May 18, 2004).  See also *Explanation of 37
> CFR 1.703(f) and of the United States Patent and Trademark
> Office Interpretation of 35 U.S.C. 154(b)(2)(A)*, 69 Fed.
> Reg. 34283 (June 21, 2004).

As such, the period for over 3 year pendency does not overlap
only to the extent that the actual dates in the period beginning
three years after the date on which the application was filed
overlap with the actual dates in the periods for failure of the
Office to take action within specified time frames.

In this instance, the relevant period under 35 U.S.C.
154(b)(1)(B) in determining whether periods of delay "overlap"
under 35 U.S.C. 154(b)(2)(A) is the entire period during which
the application was pending before the Office, February 22, 2006
to the date the patent issued on June 9, 2009. The Office did
not delay 197 days and then delay an additional 107 days.
Accordingly, 197 days of patent term adjustment for Office delay
(not 197 days and 107 days) was properly entered because the
entire period of delay of 107 days attributable to the delay in
the issuance of the patent under 37 CFR 1.702(b) overlaps with

Patent No. 7,544,362   Application No. 11/359,334          Page 4

the 197 days attributable to grounds specified in § 1.702(a)(1) and (a)(2). Further, patentees failed to engage by an uncontested period of 97 days.

In view thereof, the Office affirms that the revised determination of patent term adjustment at the time of the issuance of the patent was 100 days.

The Office acknowledges submission of the $200.00 fee set forth in 37 CFR 1.18(e).  No additional fees are required.

The file does not indicate a change of address has been submitted, although the address given on the petition differs from the address of record. If appropriate, a change of address should be filed in accordance with MPEP 601.03.  A courtesy copy of this decision is being mailed to the address given on the petition; however, the Office will mail all future correspondence solely to the address of record.

Telephone inquiries specific to this matter should be directed to Charlema Grant, Petitions Attorney, at (571) 272-3215.

*Christina Partera Donnell for*

Kery Fries
Senior Legal Advisor Attorney
Office of Patent Legal Administration


Cc:  Pfizer, Inc.
     Patent Department 2nd Floor
     150 East 42nd Street
     New York, NY 10017-5755